(574 P.2d 224)
No. 48,762

In the Matter of the Estate of  Clarence R. Sowers, Deceased. SOUTHWEST NATIONAL BANK, *Appellee,* v. JOHN W. SOWERS, *Appellant.*

Opinion filed November 23, 1977.

*Sidney J. Brick,* of Brick & Bell, of Wichita, for the appellant.

*Roetzel Jochems* and *Robert L. Heath,* of Jochems, Sargent & Blaes, of Wichita, and *Frank C. McMaster,* of McMaster & Smith, of Wichita, for the appellee.

Before HARMAN, C.J., REES and SWINEHART, JJ.

HARMAN, C.J.: This is an appeal in a probate proceeding wherein a district court ruled that a spendthrift trust had not been created and it enforced assignments which a legatee son had made of his interest in his father's estate. The issues are two-fold: (1) Was the assignee bank a proper party to appeal from the probate court's order of final settlement, and (2) was the beneficiary improperly denied a trial *de novo* in the district court? We answer the first question in the affirmative and the second in the negative and affirm.

The case had its inception in 1965 with the execution of a joint will by Clarence R. Sowers and his wife, Ruby C. Sowers. Primary beneficiaries under the will were the wife Ruby and two sons of Clarence R. Sowers, namely, John W. Sowers, appellant herein, and Clarence Richard Sowers. The elder Mr. Sowers died July 4, 1971, and the will was admitted to probate August 10, 1971, in the probate court of Sedgwick County, Kansas. For present purposes we need narrate only the following provisions of the will:

"2.   It is our desire that in event Ruby C. Sowers survives Clarence R. Sowers, a trust estate shall be created in all the property standing in our names at the time of our death, and said trust estate shall be in full force and effect for a period of twenty (20) years from the date of the death of the survivor of us.

"3.   [Appoints John W. Sowers and the 'survivor of us' as trustees.]

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"5.   That in the event Ruby C. Sowers survives Clarence R. Sowers, she shall have the use and occupancy of the home of the undersigned at 3844 East Second Street, Wichita, Kansas, for the period of her natural life-time; but in the event she shall remarry, she shall be entitled to all of the household furnishings and effects. That in the event she shall remarry, the home will be sold and the net proceeds will be paid into the trust estate for the payment of the taxes.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"7.   That if the said Clarence R. Sowers shall precede the said Ruby C. Sowers in death, the said Ruby C. Sowers shall receive an undivided one-half (½) of the net earnings of the trust estate, taking into consideration taxes, insurance, income taxes, and other necessary expenses, and taking into consideration that a reserve shall be held in said trust estate at all times in the amount of Three Thousand ($3,000.00) Dollars for emergencies.

"8.   That in the event Ruby C. Sowers survives Clarence R. Sowers, upon her death, we hereby devise and bequeath unto John W. Sowers and Clarence Richard Sowers, the entire trust estate; share and share alike.

"10. In the event Ruby C. Sowers precedes Clarence R. Sowers in death, all her property; real, personal and mixed shall go to and vest in Clarence R. Sowers, and the trust estate shall not exist."

Other provisions of the will made specific bequests if Clarence R. preceded Ruby in death or in event both died in a common accident.

November 12, 1971, John W. Sowers assigned appellee Southwest National Bank of Wichita, Kansas, all his right, title, interest and distributive share in Clarence R. Sowers' estate, which written assignment was filed in the probate court the same day.

On December 29, 1971, Ruby as administratrix filed a petition for construction of the joint will. An order of construction was filed February 17, 1972. Addressing itself to the asserted ambiguities, the probate court found that the trust should be in force for a period of twenty years after Ruby's death, and thereafter the corpus of the trust should be distributed to John W. Sowers and Clarence Richard Sowers equally. The court further found that the trustees should keep $3,000 in income in reserve at all times for emergencies, and one-half of the income should be distributed to Ruby and one-fourth each to John and Clarence Richard. Direction was given respecting payment of bequests and estate tax, John's request to withdraw as a trustee was granted, and the Southwest National Bank was appointed to act as trustee in place of John. This order, which was approved by John, substantially followed the recommendations of Lyle P. Baker, attorney for Ruby and member of the law firm which had included the senior Sowers and his son John. No appeal was taken from this order.

John W. Sowers then made four more assignments of his interest in the Clarence R. Sowers estate: June 9, 1972 to Morris Plan, filed in probate court the same day; November 7, 1972 to Morris Plan, filed in probate court the same day; June 8, 1973 to Morris Plan, filed in probate court June 18, 1973; and June 14, 1973 to Seneca State Bank of Wichita, filed June 15, 1973.

On September 10, 1973, Ruby, John and Clarence Richard Sowers entered into a family settlement agreement which contained the following in paragraph 5:

"(e) To the extent that same is permitted by law, none of the beneficiaries of this trust shall have any power to dispose of or to change by way of anticipation the interest, or any part of the interest, of any such beneficiary, except that the interests in the trust corpus of JOHN W. SOWERS and CLARENCE RICHARD

SOWERS are subject to proper testamentary disposition by Last Will and Testament by said corpus beneficiaries, JOHN W. SOWERS and CLARENCE RICHARD SOWERS; and all sums payable to any of the three (3) such beneficiaries under the trust heretofore created shall be free and clear of the debts, contracts, alienations and anticipations of the beneficiaries, and of all liabilities for levies and attachments and proceedings of whatsoever kind at law or in equity, and in the case of a married woman or man, free from the control of her husband or his wife."

On September 17, 1973, petition for final settlement in the Clarence R. Sowers estate was filed in probate court along with the family settlement agreement. No notice of this was given appellee Southwest bank. On October 25, 1973, John filed his petition in bankruptcy in the U. S. District Court for the District of Kansas. On November 12, 1973, a journal entry of final settlement was filed which recited the following:

"Under the Will of Clarence R. Sowers, deceased the rest and residue of the estate both real and personal should be assigned to and delivered into Trust, pursuant to the terms and limitations spelled out in the Will of the deceased and the before mentioned Family Settlement Agreement."

Appellee Southwest promptly filed notice of appeal to the district court from the foregoing order. When the matter came before the administrative judge for hearing, and after inquiry into the nature of the appeal, the proceeding was turned over to the judge of division five of the district court for determination of two questions of law: (1) Whether or not an assignee of the interest of a beneficiary of this estate was a proper person to bring this appeal, and (2) whether or not a beneficiary of this estate who has assigned his interest therein for valuable consideration may, through the subsequent execution of a family settlement agreement purporting to place limitations upon the inheritance under the will of the decedent through the establishment of a spendthrift trust, defeat the interests of the assignees in said beneficiary's interest in the estate.

The judge of division five, after reviewing the complete probate court file, answered the first question in the affirmative and the second in the negative and returned the matter to the administrative judge, who then established priorities among John's creditors and ordered enforcement of their claims, giving first priority to appellee Southwest's assignment. That court also denied John's request to offer extrinsic evidence to show that Clarence R. Sowers intended by his will to create spendthrift trusts. John has appealed to this court.

Our statute governing appeals from probate court at the time in question here was K.S.A. 1973 Supp. 59-2404, which provided:

"Such appeal may be taken *by any person aggrieved* within thirty (30) days after the making of such order, judgment, decree, or decision . . . ." (emphasis supplied)

Appellant John W. Sowers' assertion that appellee Southwest bank was not a proper party to appeal from the probate court's order is based on cases wherein assignees attempted to appeal from orders contesting or construing a will. Those cases are not controlling here where the appeal is from an order of final settlement. The quoted statute and pertinent case law govern. Appellant had borrowed over $100,000 from appellee and had assigned his full share in his father's estate as security. The assignment was filed in the estate proceedings in the probate court. Certainly appellee, as a creditor having a secured claim against the legatee's share of a testator's estate, was an aggrieved party within the meaning of K.S.A. 1973 Supp. 59-2404 so as to be able to appeal from an order of final settlement in the estate which had the effect of invalidating his security interest.

Case law would reach the same result. Instructive is *Sarbach v. Deposit Co.,* 99 Kan. 29, 160 Pac. 990, which involved an insolvent individual estate which had no assets except those which might accrue to it from the decedent's share of a partnership estate after partnership debts were paid. There it was held that a creditor of the individual estate had such interest in the accounting and settlement of the partnership estate as would entitle him to appear in the probate court and resist the allowance of questionable claims against the partnership estate and to appeal from the decision of the probate court.

Appellant's second point on appeal is that the trial court erred in denying him a trial *de novo* pursuant to K.S.A. 1975 Supp. 59-2408. The argument is that the Sowers will was ambiguous, and the family settlement agreement so recited; hence appellant should have had the opportunity to present evidence which would have shown that the decedent's intent was to create a spendthrift trust. It is further asserted the trial court ignored this aspect of the case. We cannot agree.

Certainly the will was imperfectly drawn in several respects, including some in connection with the trust established therein.

These gaps and obscurities were the subject of the construction action and were apparently remedied to everyone's satisfaction without any mention of a spendthrift trust. None of the asserted ambiguities related to a spendthrift trust and none of those now urged point to the fact a spendthrift trust was intended.

A spendthrift trust is a trust created to provide a fund for the maintenance of a beneficiary and at the same time to secure the fund against his improvidence or incapacity. Provisions against alienation of the trust fund by the voluntary act of the beneficiary or by his creditors are its usual incidents (see *Sherman v. Havens,* 94 Kan. 654, 146 Pac. 1030).

A requisite to the creation of such a trust is that the trustor clearly manifest the intention not only to create a trust, but to create it with the spendthrift effect (76 Am. Jur. 2d, Trusts, § 150). The intent need not be stated in express terms but may come from construction of the trust instrument as a whole (*Sherman v. Havens,* supra). Inference of intent to create such a trust must be made with reasonable certainty and cannot come from loose and vague declarations (76 Am. Jur. 2d, supra, § 38). Here the trust was one created by will and principles applicable to will construction come into play. The intent of the testator as expressed in the entire will is paramount. Where a will is not ambiguous and can be carried into effect without extrinsic evidence of intention, such evidence is inadmissible (*Postlethwaite v. Edson,* 102 Kan. 104, 171 Pac. 769).

Here the will contained no language indicating or suggesting that the beneficiaries of the trust could not alienate their shares or that their shares were not subject to the claims of their creditors. Absent any semblance of these indicia of a spendthrift trust, receipt of evidence indicating such an intent was inadmissible and the trial court properly excluded it. Were the rule otherwise, a will could be completely rewritten without any such direction appearing in the will.

In the cases relied on by appellant to open up the proceedings for the taking of further evidence, there was some language in the written instrument suggesting some intent to create a spendthrift trust. No such suggestions nor any restraints or restrictions on alienation, either voluntary or involuntary, were in the Sowers will.

The trial court made no express ruling declaring a want of the

requisite factors before extrinsic evidence could be adduced in support of a spendthrift trust, but such a finding seems implicit in the ruling made. It had before it the will and the complete probate court file. It had all the material facts before it concerning the testator's intent with respect to the creation of a spendthrift trust.

Where otherwise appropriate, summary judgment procedure under K.S.A. 60-256 is applicable when a district court exercises its *de novo* jurisdiction on an appeal from probate court (*In re Estate of Mullin*, 201 Kan. 756, 443 P.2d 331). Motion for summary judgment was not made in this case (a prior motion made by appellee was denied as premature), but a district court has inherent power to enter summary judgment on its own motion when no genuine issue of any material fact remains and one of the parties is entitled to judgment as a matter of law (*Mater v. Boese*, 213 Kan. 711, 716, 518 P.2d 482, 487-488). The trial court here did not err in granting summary judgment in trial *de novo* of the issues before it.

The family settlement agreement is of no moment. A person may not create a spendthrift trust for himself; that is, he may not place his own property in trust for his own benefit and provide that the funds shall not be subject to the claims of his creditors. (*Utley v. Graves*, 258 F. Supp. 959 [D.D.C. 1966].)

In *Herd v. Chambers*, 158 Kan. 614, 149 P.2d 583, this was said:

". . . [T]he American doctrine supported by the great weight of federal and state authorities is, that irrespective of statute an individual cannot create out of his own property for his own benefit a trust for himself and thereby defeat his creditors of their lawful demands." (p. 623)

The judgment is affirmed.