FILED
United States Court of Appeals
Tenth Circuit

May 20, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In re: PHILLIP L. HILGERS and
NANETTE HILGERS,

Debtors,

_____

D. MICHAEL CASE, Trustee,

Plaintiff-Appellee,

v.

PHILLIP L. HILGERS; NANETTE
HILGERS; PHILLIP L. HILGERS, as
Trustee of the Laverne W. Hilgers
Trust,

Defendants-Appellants,

and

TURNBULL OIL, INC.; STEPHEN A.
HILGERS, as Trustee of the Jack E.
Hilgers Trust and as Trustee of the
Blanche A. Hilgers Trust,

Defendants-Appellees.

No. 07-3233
(BAP No. KS-06-98)
(BAP)

**ORDER AND JUDGMENT**[*]

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before **BRISCOE**, **PORFILIO**, and **BALDOCK**, Circuit Judges.

This matter began as an adversary action in which the bankruptcy trustee sought declaratory relief to establish the debtor, Phillip L. Hilgers's, interests in three trusts as property of the bankruptcy estate. The bankruptcy court resolved the matter in favor of the bankruptcy trustee, and Mr. Hilgers appealed to the Bankruptcy Appellate Panel (BAP). In affirming the bankruptcy court's decision, the BAP held that Mr. Hilgers's interests in the trusts were the property of the bankruptcy estate. More particularly, it concluded that the spendthrift clauses in the trusts were not enforceable because the trusts had effectively terminated prior to the date of bankruptcy. Mr. Hilgers appeals the BAP's decision. We have jurisdiction under 28 U.S.C. § 158(d)(1).

"Although this is an appeal from a BAP decision, we independently review the decision of the bankruptcy court, reviewing the court's factual findings for clear error and its legal conclusions de novo." *Redmond v. Clark (In re Wagers)*, 514 F.3d 1021, 1022 (10th Cir. 2007). We have conducted this independent review, and we AFFIRM the BAP's judgment and formally adopt its opinion, which is attached as an appendix.

ENTERED FOR THE COURT
PER CURIAM

-2-

FILED

U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

July 10, 2007

Barbara A. Schermerhorn
Clerk

**APPENDIX**

<u>PUBLISH</u>

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE PHILLIP L. HILGERS, also known as Phil Hilgers, and NANETTE HILGERS,<br><br>Debtors. | BAP No.    KS-06-098 |
| D. MICHAEL CASE, Trustee,<br><br>Plaintiff – Appellee,<br><br>v.<br><br>PHILLIP L. HILGERS and PHILLIP L. HILGERS, as Trustee of the Laverne W. Hilgers Trust,<br><br>Defendants – Appellants,<br><br>and<br><br>TURNBULL OIL, INC., STEPHEN A. HILGERS, as Trustee of the Jack E. Hilgers Trust, and STEPHEN A. HILGERS, as Trustee of the Blanche A. Hilgers Trust,<br><br>Defendants – Appellees. | Bankr. No.  04-11019-7<br>Adv. No.    04-05281<br>  Chapter   7<br><br>OPINION |

Appeal from the United States Bankruptcy Court
for the District of Kansas

Ross Wichman of Anderson & Wichman, Hays, Kansas, for Defendant – Appellant Phillip Hilgers.

J. Michael Morris of Klenda, Mitchell, Austerman & Zuercher, L.L.C, Wichita, Kansas, for Defendant – Appellee Turnbull Oil, Inc.

D. Michael Case, Trustee, pro se.

Before McFEELEY, Chief Judge, BOHANON, and BROWN, Bankruptcy Judges.

BROWN, Bankruptcy Judge.

Appellant Phillip Hilgers (Debtor) appeals the bankruptcy court's judgment declaring that his interests in three trusts were property of his bankruptcy estate and subject to turnover to the bankruptcy trustee under 11 U.S.C. § 542(a).[1] For the following reasons, we affirm.

I.    **Background**

The Debtor's parents, Jack and Laverne Hilgers, and his grandmother, Blanche Hilgers, executed three revocable trusts (the Trusts) in 1991. The Trusts are identical in all aspects relevant to this appeal. All of the Trusts contain spendthrift clauses that the bankruptcy court determined were valid under Kansas law.[2]

Each of the Trusts gave the settlor the income from the trust property during the settlor's life and, upon the death of the settlor, granted a life estate to either Jack or Laverne Hilgers or both. Upon the death of the life beneficiaries, the Trusts provided that the remaining trust property was to be divided among Jack and Laverne Hilgers' four children equally. Thus, the Debtor is a one-fourth remainder beneficiary of each of the three Trusts. He is also the successor trustee of the Laverne Hilgers Trust.

Blanche Hilgers died in 1997, Laverne Hilgers died in 2000, and Jack Hilgers died on January 14, 2001. The Debtor filed his bankruptcy petition more than three years after Jack Hilgers' death, on March 4, 2004. Appellee D. Michael Case (Bankruptcy Trustee) was appointed as his Chapter 7 trustee.

The Bankruptcy Trustee filed an adversary proceeding seeking a declaration that the Debtor's interest in the residue of the Trusts was an asset of

---

[1]    *See Case v. Hilgers (In re Hilgers),* 352 B.R. 298 (Bankr. D. Kan. 2006).

[2]    *Id.* at 304-05. Neither Appellee has appealed the bankruptcy court's determination that the spendthrift clauses were valid.

the Debtor's bankruptcy estate and subject to turnover. He named the Debtor, both in his individual capacity and as trustee of the Laverne Hilgers Trust, and Appellee Turnbull Oil, Inc. (Turnbull) as defendants. On October 2, 2003, five months prior to the Debtor's bankruptcy, Turnbull had garnished the Debtor's interests in the Trusts. Turnbull claimed that its interest as a pre-petition garnishing judgment creditor was superior to the estate's interest in the Trusts.

Based primarily on stipulated facts,[3] the bankruptcy court concluded that the Trusts terminated upon the death of the last surviving life beneficiary, Jack Hilgers. When the Trusts terminated, the bankruptcy court reasoned, the spendthrift provisions were no longer effective. Thus, at the time of the Debtor's bankruptcy filing, the Debtor's interest in the Trust was no longer protected from inclusion in his bankruptcy estate. The bankruptcy court also determined that, upon termination of the Trusts, the trustees were required to promptly wind up the affairs of the Trusts and make distributions to the beneficiaries and that such distribution could be compelled by a court at the behest of a creditor. Therefore, the bankruptcy court ordered the trustees to turn over the Debtor's one-fourth share of the distribution to the Bankruptcy Trustee. Finally, the bankruptcy court concluded that, since Turnbull's garnishment lien attached to the Debtor's interest in the Trusts after the spendthrift provision had ceased to be effective, but prior to the bankruptcy filing, the distributions to the Bankruptcy Trustee were subject to Turnbull's garnishment lien.[4]

## II.    Appellate Jurisdiction

This Court has jurisdiction to hear timely filed appeals from "final

---

[3]    Pre-Trial Order at 3-5, ¶ 6, *in* Appellant's Appendix ("App.") at 22-24. The Debtor also presented the testimony of Stephen Hilgers, a trustee of two of the Trusts, but he did not designate a copy of the transcript of this testimony on appeal.

[4]    The bankruptcy court's determination of the validity and priority of Turnbull's garnishment lien was not appealed.

judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[5] Appellant's notice of appeal was timely filed within ten days of entry of the final judgment in the Bankruptcy Trustee's adversary proceeding. Neither party elected to have this appeal heard by the district court for the District of Kansas. Thus, this Court has jurisdiction to review the Order.

## III. Standard of Review

The pertinent facts in this case were not disputed. Whether the Trusts had terminated prior to the Debtor's bankruptcy, whether the spendthrift provisions in the Trusts were effective on the petition date, and whether the trustees had a duty to promptly wind up the Trusts and make distributions are questions of law. Questions of law are reviewable *de novo*.[6] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[7]

## IV. Discussion

Section 541(c)(2) of the Bankruptcy Code excludes from property of the estate a debtor's beneficial interest in a spendthrift trust. By the terms of the statute, "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Thus, to determine whether the Debtor's interests in the Trusts were excluded from his estate, we must analyze the nature of that interest, under applicable state law, as of the time of his bankruptcy filing.[8] These Trusts

---

[5]     28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.

[6]     *Fowler Bros. v. Young (In re Young),* 91 F.3d 1367, 1370 (10th Cir. 1996).

[7]     *Salve Regina Coll. v. Russell,* 499 U.S. 225, 238 (1991).

[8]     *In re Roth*, 289 B.R. 161, 165 (Bankr. D. Kan. 2003).

are governed by Kansas law.[9] In particular, they are governed by the Kansas Uniform Trust Code (KUTC),[10] which applies to all trusts created before, on, or after its effective date of January 1, 2003,[11] as it is supplemented by the common law of trusts, set forth in the Restatement of Trusts, where there is no statute directly on point.[12]

The KUTC provides that, "a trust terminates to the extent the trust is revoked or expires pursuant to its terms, no purpose of the trust remains to be achieved, or the purposes of the trust have become unlawful, contrary to public policy, or impossible to achieve."[13] Thus, according to the KUTC, a trust may terminate either by express or implied terms. This is consistent with the common law of trusts which provides that,

> [a] trust will terminate in whole or in part upon the expiration of a period or the happening of an event as provided by the terms of the trust; in the absence of such a provision in the terms of the trust, termination will occur . . . when the purposes(s) of the trust . . . are accomplished.[14]

The bankruptcy court determined that the Trusts terminated more than three years prior to the Debtor's bankruptcy, when the last surviving life beneficiary died. It based this conclusion on the following language set forth in Article VI (A) of the Trusts:

---

[9] *See* Jack E. Hilgers Revocable Trust, Article X, ¶ G, *in* App. at 41. Since all of the Trusts have identical provisions, insofar as they are relevant to this appeal, the citations to the "Trust" in this opinion refer to the Jack E. Hilgers Revocable Trust, as representative of all of the Trusts' language.

[10] Kan. Stat. Ann. §§ 58a-101-1107 (2006).

[11] KUTC § 58a-1106(a)(1); *In re Harris Testamentary Trust,* 69 P.3d 1109, 1113 (2003).

[12] KUTC § 58a-106; *In re Estate of Somers*, 89 P.3d 898, 903 (2004).

[13] KUTC § 58a-410(a).

[14] Restatement (Third) of Trusts § 61 (2003).

<u>Residue</u>

On the death of settlor, all property held in trust hereunder . . . shall be held in trust or disposed of as follows:

(A) My wife . . . shall have a life estate in all the residue of said property, real and personal for her lifetime . . . and on her death the remainder interest in all of said property, shall be divided by the successor trustee as equitably as possible so that my four children . . . shall each share equally in the proceeds of this trust, taking into account that if any of said children should be deceased, then the share of the deceased child shall be distributed to his or her children.[15]

The bankruptcy court interpreted this language to mean that "[o]nce the life beneficiary dies and the residue is divided equally among the remainder beneficiaries, there is nothing further to administer with respect to the trust. No further purpose of the trust remains once the residue passes to the remainder beneficiaries."[16]

The bankruptcy court's reasoning and conclusion on this issue are sound. They comport with both the KUTC and common law as set forth in the Restatement.[17] The Trusts clearly provide that they were to continue during the

---

[15] Trust, Article VI, *in* App. at 38.

[16] *Case v. Hilgers (In re Hilgers),* 352 B.R. 298, 306 (Bankr. D. Kan. 2006).

[17] The bankruptcy court relied on the following example in the Restatement:

[A] fairly typical trust may provide for the support of a designated beneficiary for life, with the trust instrument specifically stating that upon the life beneficiary's death the trust is to terminate and that the trust property is then to be distributed to one or more designated remainder beneficiaries.

. . . .

On the other hand, the terms of a trust for such a purpose might fail to specify when the trust is to terminate, or when the property is to be distributed, but instead leave the settlor's intention to be inferred from the words and purposes of the trust. For example, if the settlor transfers property in trust for the support of a designated beneficiary for life and then for the benefit of another or others absolutely, the inference from the terms of the trust is that the settlor intended the trust to terminate on the life beneficiary's death

(continued...)

lifetime of the life beneficiaries and that, upon the death of the life beneficiaries, all of the remaining property was to be distributed. While the specific word "terminated" is not used in the Trusts, termination is implied from the fact that all of the remaining property was to be divided among the Hilgers' children or grandchildren upon the death of the life beneficiaries. At that time there was no purpose to be fulfilled by continuing the Trusts; there would be no property left to be administered.

The Debtor contends that the words "shall be held in trust or disposed of" in the introductory clause in Article VI of the Trusts gave the trustees the unfettered discretion either to distribute the remainder of the trust property or to continue to hold it in trust indefinitely. We disagree. This language refers to what is to happen to the trust property on the settlors' deaths. It is descriptive of the fact that, in the Blanche Hilgers Trust, certain monetary gifts were to be made upon her death, and the balance was to remain in trust for the benefit of the life beneficiaries. The introductory language, by its unambiguous terms, does not describe what is to happen upon the death of a life beneficiary. The disposition of the Trust property upon the happening of this event is specifically addressed in the subsequent language of Article VI (A). The more specific language provides that, on the life beneficiaries' death, the remainder "shall be divided" among the surviving children and "shall be distributed" to the children of any child who predeceased the life beneficiary.

The Debtor next argues that the administration provisions of the Trusts

---

[17](...continued)
 even though that time of termination or distribution is not stated in specific language.

*Id.* at 306-07 (citing Restatement (Third) of Trusts § 61 cmt. b (2003)).

 We agree with the bankruptcy court that this illustration in the Restatement is virtually identical to the fact situation involved here.

contemplate no distribution to remainder beneficiaries until the trustees have determined, in their discretion, that there are no potential tax liabilities. While the Debtor did not include a transcript of the trial in the record before this Court, the bankruptcy court's findings reflect that the Debtor had argued that the Trusts could suffer adverse tax consequences if certain trust property were to be distributed to beneficiaries and later used in a manner inconsistent with the "family farm" election that the trustees had made for estate tax purposes.[18] The bankruptcy court ruled that t"[n]o evidence was produced that the beneficiaries would discontinue use of the real estate that would trigger additional taxes."[19] Thus, the bankruptcy court concluded that this "purported justification does not negate the dispositive provisions of the Trusts or their termination on the life beneficiary's death" and, therefore, did not give the trustees discretion to withhold distributions.[20]

Since the Debtor did not include a transcript of the trial in his Appendix, we do not have a record of the testimony he presented on this issue. Consequently, we do not have a sufficient record from which to review the bankruptcy court's conclusion that adverse tax consequences were unlikely. As a result, we must accept the bankruptcy court's factual finding in this regard as correct.[21] And based on this finding of fact, we must conclude that the tax issues did not justify the trustee's failure to make distributions to the remainder beneficiaries.

Finally, the Debtor argues that the equality of distribution between the children, which was intended by the settlors, will not be achieved if his creditors

---

[18] *In re Hilgers,* 352 B.R. at 307 n.30.

[19] *Id.*

[20] *Id.*

[21] *Deines v. Vermeer Mfg. Co.,* 969 F.2d 977, 979 (10th Cir. 1992).

are paid from his share of the Trust property. Therefore, he argues, the Trusts will not terminate until he receives a discharge in bankruptcy and his bankruptcy case is closed. Had the settlors of the Trusts wanted to continue the spendthrift protection for one more generation, they could have provided a successive life estate in the children, with ultimate distribution postponed until the children's deaths. They did not do so and we cannot, by our construction, rewrite these Trusts.

Having determined that the bankruptcy court was correct in its conclusion that the Trusts terminated prior to the filing of the Debtor's bankruptcy case, the rest of the analysis is straightforward. The KUTC provides that, upon termination of a trust, "the trustee *shall* proceed *expeditiously* to distribute the trust property to the persons entitled to it . . . ."[22] It further addresses the right of a creditor to reach a beneficiary's interest in a spendthrift trust upon the beneficiary's right to receive a distribution as follows:

> Whether or not a trust contains a spendthrift provision, a creditor . . . of a beneficiary may reach a mandatory distribution of income or principal, including a distribution upon termination of the trust, if the trustee has not made the distribution to the beneficiary within a reasonable time after the mandated distribution date.[23]

According to Kansas law, when the Trusts terminated upon the death of Jack Hilgers, the trustees had a duty to "expeditiously" wind up the estates and make distributions to the remainder beneficiaries, including the Debtor. From the record before us, we are unable to conclude that there was any justification in the Trusts' provisions or the KUTC for their failure to make the distributions and a "reasonable" time had more than elapsed between Jack Hilgers' death in January, 2001 and March, 2004, when the Debtor filed for bankruptcy protection. Therefore, under the KUTC, the Debtor's creditors could have reached the

---

[22]    KUTC § 58a-817(b) (emphasis added).

[23]    KUTC § 58a-506(b).

distributions from the Trusts that were then due him.[24]  The spendthrift provisions of the Trusts had ceased to be effective, and the Debtor's interest in the Trusts became property of the estate under 11 U.S.C. § 541(a) and (c)(2), subject to Turnbull's lien rights.  As property of the estate, the Debtor's interests were subject to turnover to the Bankruptcy Trustee under 11 U.S.C. § 542(a).

## V.     Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is AFFIRMED.

---

[24]     The KUTC expressly provides that the statutory rights of creditors to reach trust property may not be modified by the terms of a trust instrument.  KUTC § 58a-105(b)(5).