**IN RE: Gary Lee ROBBEN, Debtor.**

**Case No. 04–40485**

United States Bankruptcy Court, D. Kansas.

Filed 12/17/2013

---

Shawn C. Jurgensen, Darcy D. Williamson, Williamson Law Office, Topeka, KS, for Trustee.

J. Mark Meinhardt, Overland Park, KS, William H. Zimmerman, Jr., Case, Moses, Zimmerman & Martin, P.A., Wichita, KS, for Debtor.

**Chapter 7**

**Memorandum Opinion and Order Denying as Moot Debtor's Motion to Order Trustee to Abandon Debtor's Trust Interest**

Janice Miller Karlin, United States Bankruptcy Judge

The Court has heard evidence on the main issue in this case, which is whether a debtor's interest in a revocable trust that contains a spendthrift clause is a part of the bankruptcy estate upon the debtor's filing a petition in bankruptcy. On March 10, 2004, Gary Robben ("Debtor") filed a Chapter 7 petition. After administering other assets, the Chapter 7 Trustee filed a final accounting[1] in December 2007, and Debtor's case was closed shortly thereafter.[2] In his schedules and Statement of Financial Affairs, Debtor did not disclose that he was a named beneficiary of a revocable trust, the Restated Robben Family Trust, which (if not earlier revoked by his mother, the settlor) would entitle him to certain property upon her death. Debtor's mother died—some 6 years after Debtor filed bankruptcy—and he has reopened his bankruptcy to seek an order requiring the Chapter 7 trustee ("Trustee") to officially abandon whatever interest the bankruptcy estate might have had in the Restated Robben Family Trust. Because the Court finds the trust contains a valid spendthrift provision under Kansas law, Debtor's interest in the trust was not property of the estate. The Court therefore denies Debtor's motion as moot because the Trustee had (and has) no interest in the Restated Robben Family Trust to abandon.

## I. Findings of Fact

Debtor was named a beneficiary of the Robben Family Trust when his parents established it in 1991. The Robben Family Trust was a revocable trust established for the benefit of Debtor's parents, Bertha and Norbert B. Robben, during their lives, with the remainder to be distributed to Debtor and his two siblings, Paul Robben and Mary Ann Ruff. He subsequently became a trustee of the trust after his father's death, and this trust contained no spendthrift clause.[3]

Debtor was also named as a beneficiary and trustee of the Bertha Robben Trust, an irrevocable trust his mother created in 1997 for the sole benefit of her children, grandchildren, and sons- and daughters-in-law. Debtor's motion to abandon does not relate to that trust.[4]

During his tenure as trustee, Debtor pledged assets of the Robben Family

---

1. Doc. 50.

2. Doc. 51.

3. Creditors' Trial Ex. A.

4. See Pretrial Order, Doc. 116 and Creditors' Trial Ex. C.

Trust in violation of his fiduciary duties as a trustee. Debtor and his family also took larger distributions than they were due from the Bertha Robben Trust. In early December 2003, Debtor revealed these actions to the other trust beneficiaries, including his mother, and also formally resigned as co-Trustee of the Bertha Robben Trust. Debtor was also replaced as co-Trustee of the Robben Family Trust upon its amendment the next month (on January 22, 2004).

Debtor's resignation and the publication of his failures as a trustee to the rest of the beneficiaries brought on a host of trust-related activity. On January, 12, 2004, for example, Debtor and his siblings entered into an agreement entitled "Robben Family Memo of Agreement," agreeing that Paul Robben would become the trustee of the Restated Robben Family Trust (with his mother serving as co-trustee), among other things. In addition, the Bertha Robben Trust was terminated, purportedly effective March 10, 2004.

Effective January 22, 2004, Bertha Robben also restated the Robben Family Trust, creating the Restated Robben Family Trust (hereafter "Trust"). As relevant here, the restatement changed the trustee from Debtor to Paul Robben, retained Debtor as the beneficiary of a one-third interest in all trust assets, and added a spendthrift provision not present in the original trust. The Restated Robben Family Trust spendthrift provision states:

> To the extent permitted by law, none of the beneficiaries hereunder shall have any power to dispose of or to charge by way of anticipation or otherwise any in-

terest given to such beneficiary; all sums payable to any beneficiary hereunder shall be free and clear of debts, contracts, alienations and anticipations of such beneficiary, and of all liabilities for levies and attachments and proceedings of any kind, at law or in equity.[5]

Both the original and the Restated Robben Family Trust granted Bertha Robben the right to amend her trust until her death. The Restated Robben Family Trust also included a second provision that could have resulted in Debtor never receiving any Trust assets: it provided that Debtor's share would be divested and distributed to his siblings should he predecease his mother.

In addition to the Robben Family Memo of Agreement and the restatement of the Robben Family Trust, the parties executed the Robben Family Settlement Agreement ("Settlement Agreement"). The Settlement Agreement was ultimately signed by all interested family members, both individually and by Paul and Bertha as trustees of the two trusts. Bertha Robben and Debtor signed the Settlement Agreement on January 22, 2004. Mary Ann Ruff signed the Settlement Agreement February 20, 2004, and Paul Robben signed March 1, 2004. The exact date the remaining beneficiaries signed the agreement is unclear, but that date is not relevant to this decision.[6]

Under the Settlement Agreement, all parties acknowledged that Debtor had performed actions inconsistent with the trust terms. Notwithstanding those action, however, the parties agreed:

---

**5.** Debtor's Trial Ex. 2, at 8. Unfortunately, the copy of this Trust provided by Creditors in their Exhibit G omitted this relevant page 8, without explanation.

**6.** Whether or not the Settlement Agreement was signed by all the parties before Debtor

entered bankruptcy does not affect the Court's reasoning on the key issue before it, which deals exclusively with the Restated Robben Family Trust. No one disputes that Trust was executed before he filed bankruptcy.

[t]hat all Parties to this Family Settlement Agreement hereby relinquish any claim in any capacity they might have against Gary L. Robben individually and/or as Trustee and/or otherwise regarding any and all matters discussed herein.[7]

Finally, Bertha Robben also amended her will, executing a new Last Will and Testament, also dated January 22, 2004. This will essentially poured her assets over to the restated trust and incorporated that trust's provisions.

When Debtor filed his Chapter 7 petition on March 10, 2004, he did not disclose on Schedule B his future or contingent interest in the Trust. The Trustee now claims he should have revealed his interest in the Trust by affirmatively describing the Trust in response to Question 18 ["equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property"] and Question 19 ["contingent and noncontingent interests in estate or a decedent, death benefit plan, life insurance policy, or trust"]. In addition, he did not list his mother or the Trust as creditors, although he did list his siblings and the other adult beneficiaries as possible unsecured creditors in Schedule F, all on advice of bankruptcy counsel.[8]

Although Debtor received his discharge on August 6, 2004, the Trustee kept the estate open and administered assets unrelated to the Trust until late 2007. The only asset in question here—Debtor's interest in the Restated Robben Family Trust—was specifically noted as Ref. # 21 in the Trustee's final (and interim) accounting, and the Trustee testified at trial that she was generally aware of the existence of both trusts throughout her administration of the estate. When she sought to be discharged of her responsibilities, she certified that "this estate has been fully administered pursuant to the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the District of Kansas Bankruptcy Rules. A Trustee's Final Report has been filed and proper disbursements completed. No funds or assets of the estate remain." [9] Previously, on July 8, 2004, the Trustee had also approved an order finding that the "Trustee's interest or right to the collateral [pledged to Gold Bank, which included certain interests of Gary Robben in the Robben Family Trust] is abandoned." [10]

The present controversy began after Bertha Robben died on January 28, 2010, almost 6 full years after Debtor filed his bankruptcy petition and 3 years after the Trustee had elected not to seek additional information to help her decide whether to pursue Debtor's interest in the identified trusts, if any. Bertha never revoked the Trust, and after she died, Paul Robben, as trustee, agreed with his sister, Mary Ann, to divide the remaining Restated Robben Family Trust assets between themselves, making no distribution to Debtor. Paul Robben testified he, as trustee, based this action on his understanding of the terms of the Trust, although Debtor argues the Trust instead required distribution of one-third of Trust assets to each of the three siblings.

In 2011, Debtor asked his siblings for an accounting of the Trust assets. When they did not provide it, he filed suit in state court seeking to remove them as co-trustees of the Trust. The state court

---

7. Debtor Trial Ex. 3, at 8.

8. The only description of their claim was "Consideration: Trust Deficiency."

9. Doc. 50.

10. Doc. 18, p.7.

dismissed his action on his siblings' motion to dismiss, finding that because he had not disclosed the Trust as an asset in his bankruptcy, the bankruptcy trustee had not expressly abandoned her interest in the Trust and thus Debtor lacked standing to bring the action. The decision noted that the case was "not about the argument that eventually will prevail in bankruptcy court, but allowing that forum the first opportunity to consider whether the equitable right to property first comes within the bankruptcy estate." [11] The decision ended with the prediction that some party would likely seek to reopen the bankruptcy case so this Court could make that determination.

Soon thereafter, Debtor moved to open the Chapter 7 case pursuant to 11 U.S.C. § 350(b), which motion was granted. [12] After the case was reopened, Debtor filed a motion seeking an order directing the Trustee to abandon any interest in the Trust pursuant to § 554(b) [13] "to the extent such interest may constitute an asset of the estate." [14] He further argues the interest was never part of his bankruptcy estate. Both the Trustee and Mary Ann Ruff and Paul Robben objected to his motion for abandonment. [15]

## II. Conclusions of Law

Debtor argues his interest in the Restated Robben Family Trust did not constitute property of his bankruptcy estate created when he filed his Chapter 7 Petition because the Trust contained a spendthrift provision, preventing its inclusion in the estate under 11 U.S.C. § 541(c)(2). [16] Under § 541(a)(1), a bankruptcy estate is created upon a debtor's filing for bankruptcy, and the bankruptcy estate includes, "[e]xcept as provided in . . . (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(c)(2) provides "a restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title," and the Tenth Circuit BAP has interpreted § 541(c)(2) to mean that a debtor's beneficial interest in a spendthrift trust is entirely excluded from the bankruptcy estate. [17]

The Sixth Circuit BAP has held that "[d]ebtors bear the burden of demonstrating that all the requirements of § 541(c)(2) have been met before the property in question can be effectively excluded from the estate." [18] This Court adopted the same standard in *In re McDonald*, [19] stating that

> [t]o exclude property from the bankruptcy estate under § 541(c)(2), Debtors must satisfy three criteria. First, they must show that they have a beneficial

---

11. Trustee Ex. KK, p.8.

12. Doc. 56.

13. Doc. 61.

14. *Id.*

15. Doc. 68.

16. Debtor also argues that his interest was of inconsequential value and should therefore be abandoned by the Trustee; because the Court agrees with Debtor's first argument, it does not reach his alternative argument.

17. *See Case v. Hilgers (In re Hilgers)*, 371 B.R. 465, 468 (10th Cir. BAP 2007) ("Section 541(c)(2) of the Bankruptcy Code excludes from property of the estate a debtor's beneficial interest in a spendthrift trust.").

18. *Rhiel v. Adams (In re Adams)*, 302 B.R. 535, 540 (6th Cir. BAP 2003).

19. *In re McDonald*, 353 B.R. 287, 293 (Bankr. D.Kan.2006).

interest in a trust. Second, they must show that there is a restriction on the transfer of that interest. Third, they must show that the restriction is enforceable under nonbankruptcy law.[20]

This Court has previously had the opportunity to consider the parameters of the § 541(c)(2) exclusion for spendthrift trusts in *In re Roth*.[21] In *Roth*, the debtor contended that because the trust contained language preventing the voluntary or involuntary alienation by a beneficiary of the trust assets, that it was a spendthrift trust, and that such trusts are excluded from the bankruptcy estate under § 541(c)(2).

*Roth* noted that spendthrift trusts have long been held valid under Kansas law. In addition, the decision noted that "[a]n examination of the legislative history of § 541(c)(2) indicates that Congress meant to exclude from the estate those assets of 'spendthrift trusts' traditionally beyond the reach of creditors under State trust law."

Thus, as it was in *Roth*, a resolution of this initial issue turns on whether the Trust qualifies as a "spendthrift trust." If so, the Debtor s interest in the trust is immune from creditors' claims as an asset of the estate under § 541(a)(1). Whether an asset is estate property is determined by examining the nature of the asset on the date the bankruptcy petition was filed.[22] Although federal law identifies the property interests that are to be included in a debtor's bankruptcy estate, such property interests themselves are created and defined by state law.[23] Thus, in this case, if the Trust was a valid spendthrift trust under Kansas law, then the Trust never became part of the bankruptcy estate.

■ Under Kansas law, a spendthrift trust is a trust with a provision that "secure[s] the fund against [a beneficiary's] improvidence or incapacity. Provisions against alienation of the trust fund by the voluntary act of the beneficiary or by his creditors are its usual incidents."[24] As noted in *Roth*, "because of the provisions of this ... spendthrift clause, neither [the debtor's] creditors nor transferees had any right to rely upon the Trust for satisfaction of their claims."[25]

■ There are no magic words required to create a spendthrift trust under Kansas law; "a spendthrift trust is created when 'the trustor clearly manifest[s] the intention not only to create a trust, but to create it with the spendthrift effect.'"[26] "The intent need not be stated in express terms but may come from construction of the trust instrument as a whole."[27] A court's inference of such intent need only be made with reasonable certainty.[28]

The spendthrift provision in the instant Trust unequivocally strips "the beneficiaries [of] any power to dispose of or to

---

**20.** *Id.* (citing *In re Adams*, 302 B.R. at 540).

**21.** 289 B.R. 161, 165 (Bankr.D.Kan.2003).

**22.** *In re Hilgers*, 371 B.R. at 468 (holding "to determine whether the Debtor's interests in the Trusts were excluded from his estate, we must analyze the nature of that interest, under applicable state law, as of the time of his bankruptcy filing.").

**23.** *In re Roth* 289 B.R. at 165 (internal citations omitted).

**24.** *Matter of Sowers' Estate*, 1 Kan.App.2d 675, 680, 574 P.2d 224 (1977).

**25.** *In re Roth*, 289 B.R. at 165.

**26.** *In re Semmel*, Case No. 01–14433, 2003 WL 23838130, at *3 (Bankr.D Kan. Feb. 27, 2003) (quoting *Matter of Sowers' Estate*, 1 Kan.App.2d at 680, 574 P.2d 224).

**27.** *Matter of Sowers' Estate*, 1 Kan.App.2d at 680, 574 P.2d 224.

**28.** *Id.*

charge by way of anticipation or otherwise any interest given to such beneficiary" and requires that "all sums payable to any beneficiary hereunder shall be free and clear of debts, contracts, alienations and anticipations of such beneficiary."[29] This language contains the usual incidents of a spendthrift trust and requires a finding that the Restated Robben Family Trust was intended to be a spendthrift trust. No party seriously argues otherwise.

■ The Trustee nevertheless makes four counter arguments why the spendthrift provision should not be enforced.[30] First, she argues that, because the Trust provides for Debtor's one third interest to pass to him in trust upon his mother's death, the trust effectively contains a provision that allows a beneficiary to control and withdraw the entire principal for his own benefit while serving as his own trustee, rendering the restraint on the transfer invalid. While the Trustee is correct that, after the interest passed to Debtor, it would no longer be protected by the spendthrift provision, this fact has no effect on the validity of the spendthrift provision while Debtor's mother was alive, as she was when Debtor filed his bankruptcy petition (and for six more years).

Second, the Trustee highlights certain provisions of the Trust related to age-based restrictions on transfer that would only become effective after Debtor's mother died and argues that these provisions rendered the spendthrift provisions unenforceable. This argument shares the same defect as the Trustee's first argument, and further fails because the provision applies only to the children of Debtor, Mary Ann Ruff, and Paul Robben, not to the siblings or Debtor, himself.

■ Third, the Trustee argues that the spendthrift provision does not apply because the assets have now been dispersed, again, over 6 years after the bankruptcy was filed. This argument similarly fails because—as the Tenth Circuit BAP has confirmed—whether an asset is estate property is determined by examining the nature of the asset on the date the bankruptcy petition was filed, not at some later time.[31]

■ The Trustee's fourth argument is that Debtor invalidated the spendthrift provisions when he exercised control over then existing trust assets by pledging some of those assets to secure a personal loan to Gold Bank in 2003, prior to filing bankruptcy. But this argument overlooks an important fact—there was no spendthrift provision in the original Robben Family Trust from which he pledged assets. As a result, Debtor's actions in

---

29. Debtor's Trial Ex. 2, at 8.

30. At oral argument, Trustee suggested that, absent a spendthrift provision, a debtor's equitable interest in a revocable trust is part of the bankruptcy estate and must be disclosed. For this argument, Trustee relies on *Redmond v. Kester*, 284 Kan. 209, 159 P.3d 1004 (2007), wherein the Kansas Supreme Court held that a trust beneficiary possesses an equitable interest in the real estate held by the trust. Likewise, she argued that if a debtor happens to know he or she is listed as a beneficiary in a will, that the debtor is also required to list that interest in question 18 or 19 of Schedule B. Because the Court determines that the

Restated Robben Family Trust contained a valid spendthrift provision, the Court does not address what property interests the debtor held that the bankruptcy estate might have possessed or that the Debtor would be required to disclose, absent the spendthrift provision.

31. *In re Roth*, 289 B.R. at 165 (holding that "[w]hether an asset is estate property is determined by examining the nature of the asset on the date the bankruptcy petition was filed") (internal citations omitted), cited favorably for this proposition in *In re Hilgers*, 371 B.R. at 468 n. 8.

pledging trust assets as trustee, before the spendthrift provision was added and before Debtor was concomitantly removed as trustee, do not invalidate the later-added spendthrift provision.

The Trustee appears to allege that because Debtor earlier abused his discretion as trustee and failed to comply with any standard for distribution, he should not now be able to use as a shield the spendthrift provision his mother apparently intentionally inserted into the Restated Trust in 2004. But as noted, this argument overlooks the sequence of events in this case. Here, the spendthrift provision that the Trustee argues was invalidated by pre-bankruptcy dealings with Gold Bank was added in 2004 at the same time Debtor was removed as trustee of the Restated Robben Family Trust. As a result, Debtor's actions pledging trust assets as trustee did not violate any spendthrift provision. Those actions, therefore, do not invalidate the later-added spendthrift provision, and there was no evidence at trial that Debtor ever pledged assets of the Restated Robben Family Trust after he was removed as trustee. It was the apparent intent of the settlor, Bertha Robben, that from January 22, 2004 forward, Debtor no longer be able to use her assets to pay his creditors. It is her intention that this Court is now required to enforce.

■ Finally, the Trustee argues that, regardless of the spendthrift provision, Debtor is judicially estopped from now claiming an interest in the Restated Robben Family Trust assets. This argument is based on her contention that Debtor's decision not to clearly disclose his interest in this Trust somehow proves that he believed he had no interest in the Trust.

She argues that his "denial" of an interest in the Trust contradicts his later state court action against his siblings where he sought an accounting and inventory of the Restated Robben Family Trust assets.

■ Three factors typically inform a court's decision whether to apply the doctrine of judicial estoppel: (1) whether the party's subsequent position is clearly inconsistent with its former position; (2) whether the suspect party succeeded in persuading a court to accept that party's former position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would gain an unfair advantage in the litigation if not estopped.[32] But Debtor does not meet even the first criteria; Debtor's position that the interest now has value is not inconsistent with his argument that it was not part of the estate, or had no value to the estate in 2004 when Debtor entered bankruptcy (some six years before his mother died and his interest became choate).

In addition to echoing the theories advanced by the Trustee, Mary Ann Ruff and Paul Robben also contend that § 541(c)(2) does not exclude Debtor's interest in the Trust from the bankruptcy estate, but rather only prevents the Trustee from **forcing** distributions from the estate to pay creditors. They cite no case law in support of this position, and such interpretation contravenes both Tenth Circuit BAP precedent [33] and this Court's holding in *In re Roth*.[34]

These counter arguments are unavailing. Having reviewed the language in the Trust

**32.** *Queen v. TA Operating, LLC,* 734 F.3d 1081, 1087–88 (10th Cir.2013).

**33.** *In re Hilgers,* 371 B.R. at 468 ("Section 541(c)(2) of the Bankruptcy Code excludes

from property of the estate a debtor's beneficial interest in a spendthrift Trust.").

**34.** 289 B.R. at 165.

and the facts of the case at the time Debtor filed his bankruptcy petition, the Court finds that Debtor had a beneficial interest in the Restated Robben Family Trust when he filed bankruptcy, the Restated Robben Family Trust restricts him from transferring that beneficial interest, and the restriction is a facially valid spendthrift provision under Kansas law. As a result, Debtor satisfies the three criteria required to exclude property from the bankruptcy estate under § 541(c)(2). The parties cannot successfully contest these criteria, and the Court finds no other fact in this case that differentiates it from *In re Roth*. Debtor's interest in the Restated Robben Family Trust was never a part of the bankruptcy estate.

Because Debtor's interest in the Restated Robben Family Trust did not become part of the bankruptcy estate, Debtor's motion seeking for the Trustee to abandon that asset is denied, as moot.

**It is so ordered.**