In re Neal Lee ROTH, Sr., and Teresa Kay Roth, Debtors.

No. 01–13378.

United States Bankruptcy Court, D. Kansas.

Feb. 10, 2003.

Ross J. Wichman, Hays, David R. Klassen, Marquette, KS, for Debtors.

Steven L. Speth, Trustee, Dana Manweiler Milby, Wichita, KS, for Trustee.

## MEMORANDUM AND ORDER

JANICE KARLIN, Bankruptcy Judge.

This matter is before the Court on Trustee's Motion for Turnover (Doc. 22). The parties have fully briefed the issue and submitted Stipulations of Fact (Doc. 49). The Court has reviewed the arguments presented by the parties, the stipulated facts and the relevant law concerning this motion and is now prepared to rule. The Court has jurisdiction under 28 U.S.C. § 157(b).

## I. STATEMENT OF FACTS

The parties have submitted Stipulations of Fact (Doc. 49). The Court adopts the stipulations set forth by the parties and, based on the stipulations, makes the following findings of fact:

1. Neal Lee Roth, Sr. (hereinafter referred to as "Neal" or "Debtor"), is one of the debtors in this case and is one of the several children of Edmund and Martina Roth (hereinafter referred to as "Edmund" and "Martina").

2. On or about January 29, 1992, Edmund and Martina created a revocable inter vivos trust, known as the Edmund Roth and Martina Roth Revocable Living Trust (hereinafter referred to as the "Trust").

3. Thereafter, Edmund and Martina amended the Trust twice prior to Martina's death.

4. Martina died some time prior to January 20, 2000.

5. On January 20, 2000, Edmund amended the Trust for the third and final time.

6. At all times since its creation, Neal has held a beneficial interest in the Trust. The Trust, the contents of which were stipulated to by the parties, provided that upon Edmund's death, Neal was to receive, if the property was still in the Trust on Edmund's death, and if the Trust had not been revoked in full or in part, the following:

   a. A 1/5 interest in items of personal property not specifically designated for others;

   b. A half section of land in Ellis County, Kansas;

   c. An interest in two joint ventures;

   d. Oil and gas production on any real estate in the Trust;

   e. And a 1/5 interest in all remaining property in the Trust.

   *See* page FIFTH provision, pages 5–8.

7. The parties have stipulated that the property Neal will receive from the Trust has a total value in excess of $150,000.00.

8. The Trust contained provisions to pay Edmund's debts, including expenses of his last illness, funeral and burial, as well as to pay any "inheritance, estate, transfer or succession taxes." *Id.* at page 5, paragraph 2.

9. Paragraph "M" of the Sixth Article of the Trust specifically provides

   "Neither the principal nor the income from this trust shall be liable for the debts of any beneficiary hereunder. Nor shall any part thereof be subject to seizure by any creditor of any beneficiary under any return or proceeding in law or in equity or otherwise, and no disposition, charge, encumbrance, sale or assignment of the income or of the principal of this trust or any part

hereof by any beneficiary hereunder shall be of any validity or legal effect or in any way recognized by said TRUSTEE."

10. The Trust did not provide for the corpus of the Trust to be retained, with subsequent distributions to the beneficiaries over time. Instead, the Trust provided that the property Neal was to receive would be payable upon Edmund's death. *Id.*

11. On July 12, 2001, Neal and his wife filed a voluntary petition seeking bankruptcy relief under Chapter 7 of the Bankruptcy Code, thereby commencing the above captioned case.

12. In August, 2001, within 180 days of Neal filing of the bankruptcy, Edmund died.

13. Steven L. Speth is the duly appointed and acting Trustee in the above captioned case.

14. No will, probate proceedings, or intestacy proceedings of any kind have or will be filed with regard to Edmund's death.

15. In December, 2001, a Partial Distribution of Assets was made to the Trust beneficiaries. As the result of a demand made by Steven L. Speth upon the trustees of the Trust, the $10,000.00 distribution that would have been distributed to Neal under the Trust was instead paid over to Steven L. Speth as the Trustee herein. That money is being held by Mr. Speth subject to further order of the Court.

16. Some or all of the assets described and referred to in Paragraphs 7

and 13, above, may have generated income since Edmund's death.

The Court will address any additional facts below, if necessary.

## II. ANALYSIS

The Trustee seeks to bring into the Debtor's Chapter 7 bankruptcy estate the estimated $150,000 in Trust property that Neal became entitled to receive within 180 days of his filing bankruptcy upon the post-petition death of his father. According to the Trustee, Neal's portion of the Trust property should be included in the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5)(A).[1] The Debtor objects to the inclusion of this property in the estate on the basis that (1) the property was not property of the estate upon filing, under 11 U.S.C. § 541(a)(1), because of the exclusion contained in § 541(c)(2), for valid spendthrift trusts; and (2) because the property did not subsequently pass to Neal, within 180 days, by "bequest, devise, or inheritance," as required by 11 U.S.C. § 541(a)(5)(A).

**A. The spendthrift provision of the Trust precludes the Debtor's interest in the Trust from being included in the bankruptcy estate under § 541(a)(1).**

The commencement of a voluntary petition for relief under Chapter 7 of the Bankruptcy Code automatically creates an estate. Section 541(a) defines property of the estate broadly to include "all the following property, wherever located and by whomever held:

(1) . . . all legal or equitable interests of the Debtor in property as of the commencement of this case."

---

1. All statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, et seq., unless otherwise specified.

Debtor first contends that because the Trust contained language preventing the voluntary or involuntary alienation by a beneficiary of his interest in Trust assets, that it is a spendthrift trust, and that such trusts are excluded from the bankruptcy estate under § 541(c)(2). That section states: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title." Spendthrift trusts have long been held to be valid under Kansas law. *Farmers Cooperative Co. v. Timken State Bank (In re Pechanec)*, 59 B.R. 899, 903 (Bankr.D.Kan.1986), *citing Sherman v. Havens*, 94 Kan. 654, 146 P. 1030 (1915) and *Watts v. McKay*, 160 Kan. 377, 162 P.2d 82 (1945).

An examination of the legislative history of § 541(c)(2) indicates that Congress meant to exclude from the estate those assets of "spendthrift trusts" traditionally beyond the reach of creditors under State trust law. See H.R. 95–595, 95th Cong., 1st Sess., 176, 368 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6136, 6137, 6323, 6324. Thus, a resolution of the initial issue before the Court turns on whether the Trust qualifies as a "spendthrift trust." If so, the Debtor's interest in the trust is immune from creditors' claims as an asset of the estate under § 541(a)(1). If the Trust is not property of the estate under § 541(a)(1), the Court must still answer whether Neal's interest in the Trust became property of the estate pursuant to § 541(a)(5).

■ Whether an asset is estate property is determined by examining the nature of the asset on the date the bankruptcy petition was filed. 11 U.S.C. § 541(a)(1); *In re Kansas Personal Communication Services, Ltd.*, 252 B.R. 179, 185 (Bankr.D.Kan.2000) *rev'd on other grounds* 256 B.R. 807 (D.Kan.2000). *See*

*also In re West*, 64 B.R. 738, 744 n. 12 (Bankr.D.Or.1986), *aff'd*, 81 B.R. 22 (9th Cir. BAP 1987). Although federal law identifies the property interests that are to be included in a debtor's bankruptcy estate, such property interests themselves are created and defined by state law. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). *See also* 5 Lawrence P. King, Collier on Bankruptcy ¶ 541.LH[3][a] (15th ed. rev.2001) ("[T]he existence and nature of the debtor's interests in property, and of his or her debts, are determined by nonbankruptcy law.").

■ In this case, Neal's interest in the Trust prior to the death of his father was contingent upon his father actually dying before having revoked that part of the Trust that set over property to Neal. Further, Neal's interest in the Trust was subject to the conditions attached by the settlor of the Trust, his father. The donor had attached the condition, set forth in Paragraph "M" of the Sixth Article of the Trust, that

> "Neither the principal nor the income from this trust shall be liable for the debts of any beneficiary hereunder. Nor shall any part thereof be subject to seizure by any creditor of any beneficiary under any return or proceeding in law or in equity or otherwise, and no disposition, charge, encumbrance, sale or assignment of the income or of the principal of this trust or any part hereof by any beneficiary hereunder shall be of any validity or legal effect or in any way recognized by said TRUSTEE."

Because of the provisions of this classic spendthrift clause, neither Neal's creditors nor transferees had any right to rely upon the Trust for the satisfaction of their claims. *Johnson v. Morawitz*, 292 F.2d 341, 344 (1961), *citing In re Watts*, 160 Kan. 377, 162 P.2d 82, and *Sherman v.*

*Havens*, 94 Kan. at 657, 146 P. 1030. *Cf. Connett v. Justus Enterprises of Kansas, Inc.*, 1989 WL 65444, *7 (D.Kan.1989) (discussing the inalienability of interests in spendthrift trusts in Kansas while deciding a motion for summary judgment in favor of the trustee of a discretionary trust). Thus, the Court concludes that because Neal had no property interest under state law in the Trust assets at the time he filed bankruptcy, those potential assets were not property of the estate pursuant to § 541(a)(1).

**B. The Debtor's interest in the trust did not pass to him by way of bequest, devise, or inheritance, thus rendering § 541(a)(5)(A) inapplicable in this case.**

■ The Court now turns to the trustee's claim that the Debtor's interest in the inter vivos Trust is part of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(5)(A). Section 541(a)(5)(A) includes as property of the estate

Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance . . .

There is no dispute among the parties that the Debtor's interest in the trust was acquired within 180 days after the filing of the petition. The issue the parties have brought before the Court is whether the

Debtor acquired the property by way of "bequest, devise, or inheritance."

As noted above, in the absence of controlling federal law, "property" and "interests in property" are questions of state law. *In re Doughman*, 263 B.R. 905, 907 (Bankr.D.Kan.1999). As recognized by the parties, the Bankruptcy Code provides no definition of the terms "bequest," "devise" or "inheritance," thus requiring the Court to look to state law for a definition of those terms.[2] The Debtor relies on K.S.A. 59–604 to support his position that the terms "bequest" and "devise" are limited to the transfer of property by way of will. Although K.S.A. 59–604 does not provide a definition of these terms, their use in this statute is certainly consistent with the Debtor's position and does indicate that, under Kansas law, the terms "devise" and "bequest" involve transfers of property by way of will.

Although Kansas has not directly defined the terms "bequest," "devise" or "inheritance," the Court believes it only reasonable that Kansas would follow the traditional meaning of these terms, as set forth in Black's Law Dictionary. Black's Law Dictionary provides the following definitions of "bequest," "devise" and "inheritance":

Bequest – a gift by will of personal property;

Devise – a testamentary disposition of land or realty; a gift of real property by the last will and testament of the donor; and

Inheritance – property which descends to heir on the intestate death of another.

Black's Law Dictionary (5th Ed. West Pub. Co.1979).

---

2. The Trustee does cite to a provision contained in the Social Security Act concerning "inheritance." According to that definition, "An inheritance is cash, a right, or a non-cash items received as the result of someone's death." However, the Debtor did not receive his interest in the Trust, as a matter of law, "as a result of someone's death." The Debt-

or's interest in the Trust was acquired by way of an inter vivos gift from his father. *See Matter of Estate of Sanders*, 261 Kan. 176, 186, 929 P.2d 153 (1996) (holding that a trust comes into immediate effect upon being established and funded, while a will never takes effect until the death of a testator).

Based on these definitions, the Debtor's interest in the Trust was not derived by way of bequest, devise or inheritance. His rights in the trust were transferred inter vivos, not by way of will or intestate succession.[3] This holding is consistent with the majority of Courts that have addressed the issue of whether an interest in an inter vivos trust is within the reach of § 541(a)(5)(A). *See, e.g., In re Schmitt,* 215 B.R. 417, 422, n. 2 (9th Cir. BAP 1997) (holding that inter vivos trusts are not considered interest obtained by "bequest, devise or inheritance"); *Matter of Newman,* 903 F.2d 1150, 1154 (7th Cir.1990) (holding that payments made to a debtor from inter vivos trusts within 180 days of filing the petition are not interests by way of "bequest, devise, or inheritance" and are not part of the bankruptcy estate); *In re Schauer,* 246 B.R. 384 (Bankr.D.N.D.2000) (holding that "distributions from an inter vivos trust do not qualify as bequests, and § 541(a)(5)(A) does not operate to bring such distributions into the bankruptcy estate."); *In re Crandall,* 173 B.R. 836 (Bankr.D.Conn.1994) (holding that the Court is constrained to give a narrow construction to the words "bequest, devise and inheritance" and to conclude such words do not encompass revocable inter vivos trusts); *In re Shurley,* 171 B.R. 769, 786 (Bankr.W.D.Tex.1994), *rev'd on other grounds* 115 F.3d 333 (5th Cir.1997), (holding that "[i]nter vivos trust distributions are not considered interest obtained 'by bequest, devise, or inheritance.'"). *Cf. Klebanoff v. Mutual Life Ins. Co.,* 362 F.2d 975 (2nd Cir.1966) (applying old Bankruptcy Act § 70(a), in holding that

insurance proceeds were not included in the statutory language as an asset that could be brought back into the estate within six months of the petition date).

The Trustee relies extensively on *In re Crandall,* 173 B.R. 836 (Bankr.D.Conn. 1994) in support of his assertion that the Debtor's interest in the Trust falls within the meaning of § 521(a)(5)(A). The Court disagrees with the Trustee's reading of *Crandall* and finds that it actually provides support for the Debtor's position relative to § 521(a)(5)(A). The *Crandall* Court addressed the issue of whether an interest in a revocable inter vivos trust is covered by § 521(a)(5)(A) as follows:

The court is constrained to give a narrow construction to the words "bequest, devise, and inheritance" and to conclude such words in their plain meaning do not encompass revocable inter vivos trusts. This conclusion is buttressed by the holding of the Second Circuit in *Klebanoff v. Mutual Life Ins. Co.,* 362 F.2d 975 (2nd Cir.1966). *Klebanoff* dealt with a bankruptcy trustee's claim to the proceeds of life insurance to which the debtor became entitled within six months of the petition date. The trustee had argued that the "technical property terms in § 70(a) should be interpreted broadly to encompass insurance proceeds." *Id.* at 979. The court rejected that argument as "spurious for, in this case, we are construing a bankruptcy statute and not embellishing principles of common law." *Id.* The court recognized that "it would have been reasonable and appropriate for Congress to have included insurance proceeds within this section if

---

**3.** The Trustee also relies on *In re Hecht,* 54 B.R. 379 (Bankr.S.D.N.Y.1985) and *In re McCullough,* 259 B.R. 509 (Bankr.D.R.I.2001) in support of his case. However, both *Hecht* and *McCullough* involved testamentary trusts rather than inter vivos trusts. Testamentary trusts, by their very nature, pass property

interests to others by bequest or devise, whereas inter vivos trusts are created during the life of the settlor and do not, therefore, implicate § 541(a)(5)(A) in the same manner as a testamentary trust. Therefore, *Hecht* and *McCullough* are not relevant to the issue before this Court.

it so desired. But, it failed to do so and in these circumstances, we cannot and should not step into the breach." *Id.* The debtor's interest in the Trust is not property of the estate under § 541(a)(5)(A).

*Id.* at 839.[4]

■ The *Crandall* Court specifically noted that its Circuit, the Second Circuit, as well as the Supreme Court, mandated a rigid application of the "plain meaning" doctrine in interpreting the words of the Bankruptcy Code. This Court is similarly constrained to presume that a legislature, here the United States Congress, "says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v., Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). A statute clear and unambiguous on its face must be interpreted according to its plain meaning. *In re Geneva Steel Co.,* 281 F.3d 1173, 1178 (10th Cir.2002).

■ When interpreting a statute, a Court must first examine its language. *Dalton v. I.R.S.,* 77 F.3d 1297, 1299 (10th Cir.1996). As the Court stated in *In re Carbaugh,* 278 B.R. 512, 522 (10th Cir. BAP 2002), the plain meaning of legislation should be conclusive, except in the "'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)). Nothing in the legislative history makes it clear that reading § 541(a)(5) literally will produce such a result. *See generally* Adam J. Hirsch, *Inheritance and Bank-*

*ruptcy: The Meaning of The Fresh Start,* 45 Hastings L.J.1975, 182–83 (1994).

Further buttressing this Court's conclusion that Congress did not intend to include property acquired by an inter vivos trust within the reaches of § 541(a)(5), as a result of its failure to specifically refer to property received through trusts, is the fact that in other federal statutes enacted in the same time frame as the 1978 Bankruptcy Code and its amendments in 1984, Congress expressly contemplated, in a different context, the use of inter vivos trusts in passing title to property. Although the Act was later repealed, Section 7 of the White Earth Reservation Land Settlement Act of 1985, which deals with keeping Osage Indian headrights or mineral interests in Osage Indian ownership, specifically provided that

No person who is not an Osage Indian may, on or after October 21, 1978, receive any interest in any headright, other than a life estate in accordance with subsection (b), whether such interest would be received by such person (but for this subsection) under a *will,* a *testamentary or inter vivos trust,* or the Oklahoma laws of *intestate succession.* 25 U.S.C. § 331 (Westlaw 2002) (repealed 2000) (emphasis added).

■ Accordingly, this Court cannot simply assume that Congress intended to include every vehicle for transferring property upon death in § 541(a)(5), since it clearly understood the concept of trusts in passing other federal statutes in the same time frame. The Court is cognizant of the fact that § 541(a) is intended to be a broad statutory provision aimed at including as much property as possible in the bankruptcy estate. However, that general legislative intent does not allow the Court to

---

**4.** The Court in *Crandall* did find that the interest in the inter vivos trust was property of the estate pursuant to § 541(a)(1). This Court has concluded the opposite based on Kansas law.

ignore the precise language of the statute. As indicated in *In re Newman v. Magill,* 99 B.R. 881, 884 (C.D.Ill.1989), "[t]here is no indication in the statute that Congress intended these terms to have anything but their normal and accepted meanings." In addition, the Seventh Circuit addressed the issue of how broadly § 541(a) should be read when dealing with an inter vivos trust in *Matter of Newman,* 903 F.2d 1150, 1154 (7th Cir.1990) when it stated:

> Congress listed the specific interests to be included as property of the estate. Those interests do not include a category into which an inter vivos spendthrift trust may fit. The decision of Congress to enumerate specific exclusions creates a presumption that cases not included in that list of exclusions are subject to the statute. See *Matter of Cash Currency Exchange, Inc.,* 762 F.2d 542, 552 (7th Cir.1985) (applying maxim *expressio unius est exclusio alterius* to provision of Bankruptcy Code), certiorari denied *sub nom. Fryzel v. Cash Currency,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232. Similarly, the decision of Congress to list certain interests without introducing them with the words "includes" or "including" creates a presumption that those are the sole interests covered. See 11 U.S.C. § 102(3).

Although it seems unfair that the fortuity of the estate planning method a debtor's benefactor chose should determine whether a debtor should be allowed to keep significant property, this Court cannot substitute its judgment for that of Congress. As the Tenth Circuit noted in *In re Meridith Hoffman Partners,* 12 F.3d 1549, 1556 (10th Cir.1993), *cert. denied,* 512 U.S. 1206, 114 S.Ct. 2677, 129 L.Ed.2d 812 (1994),

> The apparent unfairness of the result reached by Congress' chosen language may motivate Congress to amend the statute, but it does not permit Courts to disregard the clear language of a statute. See *Union Bank v. Wolas,* 502 U.S. 151, 158, 112 S.Ct. 527, 531, 116 L.Ed.2d 514 (1991) ("The fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning."); *[In re] C–L Cartage,* 899 F.2d [1490] at 1494 [(6th Cir.1990)].

The Court finds that § 541(a)(5)(A) does not operate to include interests in property transferred to a debtor by way of inter vivos trust. Therefore, the Debtor's interest in Trust property is not part of his bankruptcy estate, notwithstanding that he became entitled to receive his entire share of the Trust within 180 days of filing this bankruptcy case.

### III. CONCLUSION

The Court finds that the Debtor's interest in the inter vivos Trust created by his father did not vest a property interest under Kansas law in Debtor, and thus his interest in the Trust at the point of his bankruptcy filing was not property of the estate under 11 U.S.C. § 541(a)(1). Secondly, Debtor's interest in the inter vivos Trust did not pass to the Debtor by way of bequest, devise or inheritance. Therefore, 11 U.S.C. § 541(a)(5)(A) does not serve to bring that property into the bankruptcy estate, either. The Trustee's motion to bring the proceeds from the inter vivos Trust into the estate pursuant to § 541(a)(5)(A) is denied, and the Trustee is ordered to return the $10,000.00 distribution he previously obtained from the Trust, and which is currently held in escrow pending further order of this Court, based on his failure to demonstrate that the property should be included in the bankruptcy estate.

IT IS, THEREFORE, BY THIS **COURT ORDERED** that the Trustee's Motion for Turnover (Doc. 22) is denied.

**IT IS FURTHER ORDERED** that the Trustee is required to return to the Debtors the $10,000.00 distribution the Trustee earlier received from the Trust.