In re David HALL, also known as Day Hall, also known as Dae Hall, also known as The Tire Cutters, Inc., and Linda M. Hall, Debtors.

Darcy D. Williamson, Trustee,
Appellant,

v.

David Hall and Linda M.
Hall, Appellees.

BAP No. KS–08–88.
Bankruptcy No. 06–40887.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Dec. 4, 2009.

Submitted on the briefs.*

Darcy D. Williamson, pro se.

Larry E. Schneider, Topeka, Kansas, for Appellees.

Before: MICHAEL, BROWN, and ROMERO, Bankruptcy Judges.

ROMERO, Bankruptcy Judge.

The Chapter 7 Trustee, Darcy D. Williamson (the "Trustee"), appeals from the Bankruptcy Court's Order of October 17, 2008. The Trustee raises two issues on appeal: (1) whether the Bankruptcy Court erred in determining Debtors could each elect to exempt as homestead a residence occupied by the family of Debtor David Hall ("D. Hall"), but not by him personally, on the date of filing; and (2) whether the Bankruptcy Court erred in determining property acquired by Debtor Linda Hall ("L. Hall") as the named beneficiary of pay on death, transfer on death, or similar designation was not property of the bankruptcy estate.

## I. BACKGROUND FACTS

D. Hall and L. Hall (collectively referred to herein as "Debtors") filed a voluntary Chapter 7 petition on September 6, 2006. As of the petition date, the Debtors owned a tract of land consisting of 1.33 acres in the city limits of Centralia, Kansas (the "Property"). On the Property are a house bearing the address 1104 4th Street, Centralia, Kansas (the "House") and a mobile home with the address 1104½ 4th Street, Centralia, Kansas (the "Mobile Home"). Pursuant to a state court order, D. Hall moved out of the House in early 2004 and began living in the Mobile Home. Although under the court order D. Hall could have returned to the House after April 19, 2004, he still lived in the Mobile Home on the date of the filing of the bankruptcy petition. On the petition date, L. Hall and the couple's children lived in the House. The Debtors' Schedule C[1] lists as exempt property "1104 4th Street, City of Centralia, Nemaha County, Kansas." The value of the claimed exemption is listed as $32,500.00, and the value of the property without deducting the exemption is listed as $40,000.00.

L. Hall's father, Robert J. Frederick Sr., passed away on September 24, 2006, 18 days post-petition. As a result, L. Hall became entitled to receive (a) certificates of deposit totaling $38,947.86; (b) a one-fifth interest in real property in Topeka, Kansas; (c) United States bonds in the amount of $3,731.33; (d) life insurance policy proceeds in the amounts of $6,651.19 and $4,005.75; (e) an individual retirement account in the amount of $2,858.54; (f) a pro rata share of personal property proceeds in the amount of $4,386.45; and (g) a pro rata share of the decedent's checking account in the amount of $370.74. With the exception of the personal property proceeds and the funds from the checking

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed.
R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. *Appellant's Appendix* ("App.") at 31.

account which were received through intestate succession and therefore property of the estate, L. Hall received all the property as a payable on death beneficiary or similar beneficiary designation.[2]

On October 17, 2006, the Trustee filed an Objection to Debtors' Homestead Exemption.[3] The Trustee's objection stated D. Hall did not occupy the House as his residence, and should not be allowed to claim an exemption for a one-half interest in the House. Further, she contended neither D. Hall nor L. Hall should be allowed to claim an exemption "of 1104 4th Street or any part thereof or connected to or known as 1104½ 4th Street, Centralia, KS."[4] According to the Trustee, the Debtors did not make a full disclosure of their living arrangements and may have engaged in behavior that would disqualify the exemption. The Trustee also alleged the large above-ground pool and other buildings and improvements should not be included in the claimed exemptions and the homestead exemption could not include any land over one acre.[5]

Contemporaneously with her Objection to Homestead Exemption, the Trustee filed a Motion for Turnover of Real Estate and Personal Property.[6] *Inter alia,* she requested turnover of "all property or funds or inheritance due the debtors as a result of the death of Robert J. Frederick Sr."[7]

The Debtors responded to both the Objection to Homestead Exemption and the Motion for Turnover. In their Response to the Objection to Homestead Exemption,[8] they stated D. Hall's intent to claim an exemption as to the Mobile Home and indicated they were willing to amend their claimed homestead exemption to include only one acre of property.[9] In their Response to the Motion for Turnover,[10] the Debtors alleged "most of the property received as a result of the post-petition death of the father of Linda M. Hall was received other than by bequest, devise, or inheritance, and is therefore not property of the estate."[11]

The Debtors filed amended statements and schedules on May 9, 2007, nearly seven months after the filing of the Objection to Homestead Exemption and Motion for Turnover, including an amended Schedule C containing a more detailed description of claimed exempt property and adding the Mobile Home.[12] Specifically, they claimed a homestead exemption of $40,000.00 on the House and real property, and a personal property exemption of $300.00 for a "1973 Bell mobile home with no tongue and no wheels."[13]

On June 14, 2007, the Trustee filed an Objection to Debtors' Amended Schedule

---

2. *See Debtors' Response to Trustee's Motion for Summary Judgment and Counter–Motion for Partial Summary Judgment, in* App. at 158–63, stipulating the personal property proceeds and the share of the bank account were property of the bankruptcy estate, and noting there was no probate administration of the estate, causing L. Hall to acquire such property by inheritance.

3. App. at 78–9.

4. *Id.* at ¶ 4, *in* App. at 78.

5. *Id.* at ¶¶ 5–6, *in* App. at 78–9.

6. App. at 75–6.

7. *Id.* at ¶ 5, *in* App. at 76.

8. App. at 82–3

9. *Id.* at ¶ 4, *in* App. at 82.

10. App. at 80.

11. *Id.* at ¶ 2, *in* App. at 80

12. App. at 97.

13. *Id.*

C and Homestead Exemption.[14] She objected to the claimed exemption in the House for the reasons previously argued, and also objected to exemptions of personal property and household goods.

On June 13, 2008, the Trustee filed a Motion for Summary Judgment as to the Objection to Homestead Exemption and Motion for Turnover.[15] On June 16, 2008, the Debtors filed their Response to Trustee's Motion for Summary Judgment and Counter–Motion for Partial Summary Judgment[16] to which the Trustee filed a Reply on July 21, 2008.[17] On August 21, 2008, the Bankruptcy Court issued a Memorandum Opinion and Order Partly Granting, and Partly Denying, Trustee's Motion for Summary Judgment on Trustee's Motion for Turnover and Objection to Exemptions ("the Section 541 Opinion").[18] The Bankruptcy Court ruled on all the issues relating to assets received by L. Hall on account of her father's death, and finding it necessary to resolve certain factual issues before ruling on the Trustee's objection to the Debtors' homestead exemption, set the homestead issue for trial.

Regarding the Motion for Turnover, the Bankruptcy Court noted the parties agreed the life insurance proceeds constituted property of the bankruptcy estate under 11 U.S.C. § 541(a)(5)(C). However, although the Debtors could have claimed an exemption for the proceeds, they had never done so. The Court therefore granted the Motion for Summary Judgment as to the life insurance proceeds.[19] That ruling has not been appealed.

In addition, the Debtors stipulated L. Hall's pro rata share of the proceeds from the sale of her father's personal property and her pro rata share of the funds in his checking account constituted property of the estate. Accordingly, the Bankruptcy Court granted the Trustee's Motion for Summary Judgment as to those funds and ordered their turnover.[20] That ruling was not appealed.

In the Section 541 Opinion, the Bankruptcy Court framed the homestead issue as follows:

> The Court must decide whether the fact that one of the two co-debtors, David Hall, occupied a different structure (a mobile home) on the same 1.33 acre tract where the house (in which his co-debtor wife and children reside) is situated impairs the homestead exemption on the house and/or the mobile home for one or both Debtors.[21]

The Bankruptcy Court found two issues of material fact remained to be tried before it could determine this issue: (1) whether D. Hall intended to return to the House in the future; and (2) whether D. Hall intended to create a new and permanent homestead in the Mobile Home. It also noted the existence of unresolved legal issues about the possibility of two homesteads. Accordingly, it denied the Trustee's Motion for Summary Judgment as to the Objection to Homestead Exemption. The Bankruptcy Court then concluded the matter would be set for trial:

> to resolve the issue of whether David Hall intended to and did abandon his homestead interest in the family home,

---

14. App. at 99–100.

15. App. at 121–57

16. App. at 158–63.

17. App. at 164–73

18. App. at 174–201.

19. *Section 541 Opinion* at 18, *in* App. at 191.

20. *Id.* at 24–25, *in* App. at 197–98.

21. *Id.* at 8, *in* App. at 181.

and whether he established a new homestead in the mobile home located on the land adjacent to the family home... and the Trustee's Motion for Turnover to the extent that motion relates to the turnover of any property not otherwise decided by this opinion.[22]

Following the trial, the Bankruptcy Court issued its Memorandum Opinion and Order Partly Granting Trustee's Objection to Debtors' Homestead Exemption and Denying Remainder of Trustee's Motion for Turnover of Personal Property (the "Homestead Opinion").[23] In the Homestead Opinion, the Bankruptcy Court found the Debtors could not seek an exemption in both the Mobile Home and the House. However, the Bankruptcy Court went on to disagree with the Trustee's assertion that D. Hall could not exempt a one-half interest in the House and L. Hall could not exempt a one-half interest in the Mobile home, finding:

At the time the bankruptcy petition was filed, David Hall's residence consisted of the mobile home located at 1104½ 4th Street, and Linda Hall's residence consisted of the house at 1104 4th Street. Each owned a joint interest in the other's residence, and each residence would qualify as an exempt homestead for the respective resident.[24]

The Bankruptcy Court went on to hold a homestead does not have to be occupied by both the owner and the owner's family, but may be occupied by the owner, the owner's family, or by both the owner and the owner's family. It concluded:

In light of this decision, Debtors will be required to amend their schedules to expressly reflect which homestead they will respectively choose to exempt, using the 1104 4th Street versus the 1104½ 4th Street addresses as well as a precise legal description so that the acreage can be ascertained. David Hall can choose to exempt either his residence at the time of filing, which was unequivocally the mobile home, or he can choose to exempt his family's residence at the time of filing-the house. Linda Hall can elect the house, which was her residence at filing, or the mobile home, which was the residence of one of her family members at the time of filing.[25]

With respect to the Motion for Turnover, the Bankruptcy Court found:

in ruling on the Trustee's motion for summary judgment, the Court has already held that the personal property obtained by Linda Hall following her father's death was not property of the estate, with the exception of certain life insurance proceeds that could earlier have been claimed exempt, but never were.

[T]he Trustee's motion for turnover is denied as to the dog crates, boat, motor, trailer and cover, satellite dish, two vehicles (thought to be Blazers), tank with sprayer and trailer, and go-carts.

The only remaining item of property at issue in the Trustee's motion for turnover is the mobile home that was at issue in the objection to the homestead exemption. Because the Court has now ordered Debtors to elect whether they are going to exempt the house or the mobile home, the Court finds this separate turnover request will be governed by that election.[26]

22. *Id.* at 26–28, *in* App. at 199–201.

23. App. at 230–254.

24. *Homestead Opinion* at 20, *in* App. at 249.

25. *Id.* at 21–22, *in* App. at 250–51 (footnote omitted).

26. *Id.* at 22–23, *in* App. at 251–52.

On October 24, 2008, the Trustee appealed the Final Order, which incorporated the findings of the Section 541 Opinion.[27]

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" and "with leave of court, from interlocutory orders and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[28] This appeal proceeds pursuant to the Court's Order Granting Motion for Leave to Appeal Interlocutory Orders, entered December 29, 2008. Neither party elected to have this appeal heard by the United States District Court for the District of Kansas; the parties have therefore consented to appellate review by this Court.[29]

## III. STANDARD OF REVIEW

There are no disputed facts in this appeal. The Bankruptcy Court's conclusions of law are reviewed *de novo*.[30] Whether the Bankruptcy Court properly applied Kansas Statute § 60–2301 or 11 U.S.C. § 541(a)(1) and (a)(5)[31] to the facts of this case is an issue of law, and subject to *de novo* review.[32]

## IV. DISCUSSION

### A. Homestead Exemption

■ Bankruptcy courts look to applicable state law when determining the validity of a debtor's claim to a state law exemption.[33] The Trustee, as the party objecting to the exemption, bears the burden of proof to show the impropriety of the exemption by a preponderance of the evidence.[34] The right to claim the homestead exemption is determined as of the date of the bankruptcy petition.[35]

The State of Kansas has elected to "opt out" of the federal exemptions provided in § 522, and instead has created the following homestead exemption:

A homestead to the extent of 160 acres of farming land, or of one acre within the limits of an incorporated town or city, or a manufactured home or mobile home, occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof, together with all the improvements on the same,[36] shall be exempted from forced sale under any process of law,

---

27. App. at 284–85.

28. 28 U.S.C. § 158(a), (b)(1), and (c)(1); Fed. R. Bankr.P. 8002(a).

29. 28 U.S.C. § 158(c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001–1.

30. *Pierce v. Underwood,* 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *In re Lampe,* 331 F.3d 750, 753 (10th Cir.2003).

31. Unless otherwise designated, all future statutory references in the text are to title 11 of the United States Code.

32. *See In re Lanning,* 545 F.3d 1269, 1274 (10th Cir.2008), *cert. granted, Hamilton v.*

*Lanning,* —— U.S. ——, 130 S.Ct. 487, 175 L.Ed.2d 343 (2009).

33. *Lampe,* 331 F.3d at 754.

34. Fed. R. Bankr.P. 4003(c).

35. *In re Robinson,* 295 B.R. 147, 153 (10th Cir. BAP 2003).

36. It should be noted the language "together with all the improvements on the same" may raise the issue whether the Mobile Home constitutes an improvement to the tract of land, rather than a separate residence. However, this issue was neither raised by the parties, nor addressed by the Bankruptcy Court. Therefore this Court cannot, and will not, address it herein. *In re Overland Park Fin. Corp.,* 236 F.3d 1246, 1253 (10th Cir.2001).

and shall not be alienated without the joint consent of husband and wife, when that relation exists[.] [37]

The statute finds its origin in the Kansas Constitution, which states:

> A homestead to the extent of one hundred and sixty acres of farming land, or one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon: *Provided,* That provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife[.] [38]

The constitutional right has been "zealously guarded and enforced" by Kansas courts.[39]

The question the Trustee asks us to consider is whether D. Hall could elect to exempt the House, occupied by D. Hall's family but not by D. Hall, on the date of filing. In evaluating this question, this Court must begin with the relevant statutory language cited above. When that language is clear, it is controlling absent exceptional circumstances.[40] Generally, "[t]he plain meaning of legislation should be conclusive[.]" [41]

The Bankruptcy Court found D. Hall intended to abandon the House as his residence and to change his residence to the Mobile Home.[42] In addition, the Bankruptcy Court found L. Hall and the couple's children, on the date of the petition, lived in the House. Adopting the "plain meaning" approach, while keeping in mind the necessity for a liberal interpretation of exemptions, it should be noted the statute provides not for "homesteads," but "a homestead." This homestead, if within a city or town, may consist of one acre or a manufactured or mobile home. The homestead described in the statute may be "occupied as a residence by the owner or by the family of the owner, or by both the owner and family thereof." [43]

■ Accordingly, the statute permits D. Hall to claim an exemption for his one-half ownership in the House, because his family lived there on the date of the petition. The statute also permits D. Hall to claim an exemption in the Mobile Home because he occupied that residence on the date of the petition. However, the word "or" in the statute mandates only one exemption

---

37. Kan. Stat. Ann. § 60–2301 (1991).

38. Kan. Const. Art. 15, § 9.

39. *Redmond v. Kester,* 284 Kan. 209, 159 P.3d 1004, 1007 (2007) (collecting cases).

40. *Fidelity Savs. & Inv. Co. v. New Hope Baptist,* 880 F.2d 1172, 1175 (10th Cir.1989).

41. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); *see also In re Duncan,* 294 B.R. 339, 342–43 (10th Cir. BAP 2003) ("We are not at liberty to ignore the plain language contained in the [Wyoming Homestead] statute.").

42. The Trustee points out correctly, and the record reflects, D. Hall stated, with regard to the Mobile Home: "I'll live there 'til I die if you don't come and get it." *Homestead Opinion* at 6, *in* App. at 235. This statement indicates the intent to abandon the House as his residence, but does not address whether he can seek an exemption in the House as a residence for his family.

43. Kan. Stat. Ann. § 60–2301 (1991) (emphasis added).

can be taken by him.[44] Hence, L. Hall could also choose to exempt either the House, where she lived on the date of the petition, or the residence occupied by her husband, a member of her family, but not both. The ruling of the Bankruptcy Court on this issue is therefore affirmed.

### B. Property Acquired on Death of L. Hall's Father

The remaining issue is whether certain property acquired by L. Hall as a result of her father's post-petition death constitutes property of the bankruptcy estate which must be turned over to the Trustee. The property in question consists of the following: (a) proceeds from the sale of Kansas real property passing to L. Hall and her siblings, pro rata, through a transfer on death ("TOD") deed; (b) the certificates of deposit and United States bonds passing to L. Hall as a payable on death ("POD") beneficiary; and (c) the individual retirement account proceeds passing to L. Hall as a designated beneficiary (collectively referred to as the "Assets"). On appeal, the Trustee argues the Bankruptcy Court erred in determining that neither § 541(a)(5)(A) nor § 541(a)(1) include the Assets in the Debtors' bankruptcy estate. We disagree.

#### 1. The Assets Do Not Constitute Property of the Estate Under § 541(a)(5)(A)

The Trustee contends the Assets constitute part of the bankruptcy estate under § 541(a)(5)(A), which includes in the estate:

(5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

(A) by bequest, devise, or inheritance[.] [45]

The Debtors respond the Assets were acquired other than by "bequest, devise, or inheritance," and therefore, are not property of the estate.[46]

■ In the absence of controlling federal law, "property" and "interests in property" are questions of state law. Because the Bankruptcy Code does not define the terms "bequest," "devise," or "inheritance," we must look to Kansas law. Unfortunately, Kansas law does not directly define such terms. As a result, the Bankruptcy Court, relying on its prior decision in *In re Roth* regarding a debtor's interest in an inter vivos trust,[47] found that

it is reasonable that Kansas courts would follow the traditional meaning of these terms as set forth in Black's Law Dictionary. Black's Law Dictionary provides the following definitions of "bequest," "devise" and "inheritance":

**Bequest**—a gift by will of personal property;

**Devise**—a testamentary disposition of land or realty; a gift of real property by the last will and testament of the donor; and

---

**44.** The Bankruptcy Court found:

There is no dispute that at the time of filing bankruptcy, David Hall's family resided in the house at 1104 4th Street, even if he did not. David Hall can thus make an election. He can choose to either exempt the property in which he was residing at the time of filing—1104½ 4th Street—or exempt the property where his family was residing at the time of the filing—1104 4th Street. He cannot exempt both.
*Homestead Opinion* at 21, *in* App. at 250.

**45.** 11 U.S.C. § 541(a)(5)(A).

**46.** *Appellee's Opening Br.* at 15.

**47.** 289 B.R. 161 (Bankr.D.Kan.2003).

Inheritance—property which descends to heir on the intestate death of another.[48]

Thus, under these definitions, the terms "bequest" and "devise" are limited to the transfer of property *by will*, and the term "inheritance" describes only property acquired *through intestate succession*. Applying these definitions, the Bankruptcy Court found the Assets were not received by way of "bequest, devise, or inheritance," but rather by way of a contractual obligation between L. Hall's father and the holder of the accounts.[49] Further, the Bankruptcy Court pointed out that Kansas statutory provisions specifically provide that POD accounts, TOD deeds, and individual retirement plans are not "testamentary" transfers.[50] Therefore, the Bankruptcy Court ruled the Assets are not brought into the estate by § 541(a)(5)(A).

Nevertheless, the Trustee argues inclusion of the Assets in the bankruptcy estate pursuant to § 541(a)(5) would be

> consistent with the purpose of the Bankruptcy Act. As noted in *Williams v. United States Fid. & Guar. Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 59 L.Ed. 713 (1915), "[i]t is the purpose of the Bankrupt Act to convert the assets of

the bankrupt into cash for distribution among creditors, and *then* to relieve the honest debtor from the weight of oppressive indebtedness[.] And nothing is better settled than that statutes should be sensibly construed, with a view to effectuating the legislative intent." [51]

On this basis, Trustee asserts "inheritance" should not be construed narrowly, stating "because Congress ... used the term 'inheritance,' it ... intended to include property that passed intestate or by *operation of law*," [52] and the Assets passed by *operation of law*. The Trustee, however, cites to no authority to support the proposition that Congress intended such an interpretation of the term "inheritance."

Few published bankruptcy court decisions have addressed the inclusion of POD-type accounts in the estate under § 541(a)(5)(A).[53] A Wisconsin bankruptcy court in *Holter v. Resop (In re Holter)*,[54] and an Illinois bankruptcy court in *In re Taylor*,[55] reached the same conclusion as the Bankruptcy Court in this case. In *In re Sykes*,[56] a New York bankruptcy court reached the opposite conclusion without analysis. A larger number of courts, including the Bankruptcy Court in this case,

---

48. *In re Hall*, 394 B.R. at 594 (citing *Black's Law Dictionary* (5th ed.1979)).

49. *Id.* at 594–95.

50. *Id.* at 595 (citing Kan. Stat. Ann. § 9–1215 (POD accounts); Kan. Stat. Ann. § 59–3507 (TOD deeds); and Kan. Stat. Ann. § 59–3513(5) (individual retirement plans)).

51. *Appellant's Reply Br.* at 10.

52. *Appellant's Opening Br.* at 22 (emphasis added).

53. *See* James Lockhart, *Construction and Application of 11 U.S.C.A. § 541(a)(5)(A), and Predecessor Statute, Respecting Property Vesting in Bankrupt After Bankruptcy by Bequest,*

*Devise, or Inheritance*, 38 A.L.R. Fed.2d 11 (2009).

54. 401 B.R. 372 (Bankr.W.D.Wis.2009) (state statute defined "devise," state case law defined "inheritance," and bankruptcy court relied on definition of "bequest" in Black's Law Dictionary).

55. No. 05–93559, 2006 WL 1275400 (Bankr. C.D.Ill.2006) (though not finding § 541(a)(5) applicable, the bankruptcy court included a POD account, IRA funds, and an inter vivos trust interest in the bankruptcy estate pursuant to § 541(a)(1)).

56. 76 B.R. 924 (Bankr.N.D.N.Y.1987) (more specifically, the account was a tax deferred savings account).

have addressed the similar issue of whether beneficial interests under various forms of revocable inter vivos trusts are included in the estate, with all but one holding that § 541(a)(5) does not reach such interests.[57] Even so, fifteen years after one commentator remarked that the proper treatment of property acquired under a will substitute within 180 days after a debtor files a bankruptcy petition "has never been resolved," not much progress has been made in this regard.[58]

The end results of construing § 541(a)(5) as Trustee proposes are not unreasonable. POD accounts, TOD accounts,[59] and TOD deeds, as well as revocable inter vivos trusts, are all devices frequently utilized in estate planning as "will substitutes." Further, interpretation of the terms "bequest, devise, and inheritance" to include only property passing pursuant to will or intestate succession, but not other more modern methods of transferring property on death, may appear to exalt form over substance. However, we are required to "presume Congress intended for the courts to apply the plain language of the statute unless such interpretation would lead to an absurd result."[60] In this case, the statutory language is plain, and though it may result in disparate treatment of similarly situated debtors and creditors, it is not absurd. If § 541(a)(5) is to include a broader scope of assets passing to a debtor by reason of another person's death within 180 days of the petition date, then that is for Congress to decide, and not the province of this Court.

**2. The Assets Do Not Constitute Property of the Estate Under § 541(a)(1)**

Section 541(a)(1) defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case," "wherever located and by whomever held."[61] The Trustee argues this statutory language is intended to be interpreted in an extremely broad manner, and encompasses every possible interest, regardless of whether the debtor is able to transfer that interest or debtor's creditors are able to reach it.[62] Therefore, though acknowledging they may have had little or no value as of the date of the petition, Trustee contends the Assets are part of the estate pursuant to § 541(a)(1).

We recognize Congress intended the scope of § 541(a)(1) to be broad.[63] However, "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."[64] Therefore, "[i]n the absence of any control-

**57.** *See, e.g., Swartz v. Fetter (In re Fetter),* 354 B.R. 242 (Bankr.C.D.Ill.2006); *In re Eley,* 331 B.R. 353 (Bankr.S.D.Ohio 2005); *In re Roth,* 289 B.R. 161 (Bankr.D.Kan.2003); *In re Crandall,* 173 B.R. 836 (Bankr.D.Conn.1994). *But cf. Smith v. Moody (In re Moody),* 837 F.2d 719 (5th Cir.1988).

**58.** *See In re Crandall,* 173 B.R. at 838 (citing Adam J. Hirsch, *Inheritance and Bankruptcy: The Meaning of the "Fresh Start,"* 45 Hastings L.J. 175, 182–83 (1994)).

**59.** The designation TOD is frequently used with respect to securities accounts made payable on death under uniform nonprobate transfer laws enacted by the states. *See, e.g.,* Kansas Uniform Transfer on Death Security Registration Act, Kan. Stat. Ann. Ch. 17, art. 49(a).

**60.** *In re Luna,* 406 F.3d 1192, 1199 (10th Cir.2005).

**61.** 11 U.S.C. § 541(a)(1).

**62.** *Appellant's Opening Br.* at 17–18.

**63.** *In re Barowsky,* 946 F.2d 1516, 1518–19 (10th Cir.1991).

**64.** *Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

ling federal law, 'property' and 'interests in property' are creatures of state law." [65] In this case, the Bankruptcy Court reasoned only after applying state law to determine whether the Debtor actually had a legal or equitable interest in the Assets as of the date of filing does § 541(a)(1) come into play to bring the property into the estate. Applying Kansas law, the Bankruptcy Court ruled the Debtor had no "interests" in the Assets as of the petition date.

The Bankruptcy Court began its analysis with Kansas Statutes § 9–1215, the statutory provision authorizing POD accounts. Section 9–1215 permits an individual to enter into a written contract with any bank "providing that the balance of the owner's deposit account . . . at the time of death of the owner shall be made payable on the death of the owner to one or more persons[.]" [66] The statute further provides:

> Every contract authorized by this section shall be considered to contain a right on the part of the owner during the owner's lifetime both to withdraw funds on deposit in the account in the manner provided in the contract, in whole or in part, as though no beneficiary has been named, and to change the designation of the beneficiary. *The interest of the beneficiary shall be considered not to vest until the death of the owner[.]* [67]

The Bankruptcy Court then articulately explained the absence of any "interest" held by Debtors as follows:

> This statute was interpreted by the Kansas Court of Appeals in *Snodgrass v. Lyndon State Bank,* and the court held that "[t]he designated beneficiary acquires *no interest* in a POD account

until the death of the owner." It is clear from the language of the Kansas statute that authorizes POD accounts, as well as Kansas court's interpretation of that statute, that Debtors had *no interest* in the POD account at the date of filing.

Similarly TOD deeds are authorized by K.S.A. 59–3501 through 59–3507. The language of the statutes authorizing and governing TOD deeds are quite similar to POD accounts in that TOD deeds transfer ownership of the interest in the property only upon the death of the owner, they are revocable at any time, they do not transfer "any ownership" until the death of the owner, and they are not testamentary in nature. Although the Court did not find a Kansas decision interpreting this statute, because of the similarity of the TOD statute to the POD statute, which has been interpreted by a Kansas appellate court, this court finds that since here the TOD owner (Linda Hall's father) did not die until after Debtor Linda Hall filed this bankruptcy petition, she had no interest (contingent or otherwise) at the time of the filing of that petition.

The Court similarly finds that Linda Hall did not have an interest in the IRA or the U.S. bonds until the death of her father. Although the Court has been unable to locate any cases discussing those issues, it nevertheless finds that being the beneficiary of a retirement account or a U.S. bond does not convey any more interest than being the beneficiary of a POD account or TOD deed- which this Court has found conveys no interest at all until the death of the owner.[68]

**65.** *Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) (quoting *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 370, 65 S.Ct. 405, 89 L.Ed. 305 (1945)).

**66.** Kan. Stat. Ann. § 9–1215 (1989).

**67.** *Id.*

We agree with the Bankruptcy Court that whatever "rights" L. Hall had in the Assets as of the petition date are not legal or equitable interests in property as contemplated by § 541(a)(1). Rather, we view them as more akin to a mere expectancy. This is because any claim L. Hall had to the Assets was subject to divestment at any time during her father's life in a myriad of ways, including depletion, transfer, assignment, and change of beneficiary.

Additionally, the Bankruptcy Court's interpretation of § 541(a)(1) in light of its relationship to § 541(a)(5) is particularly persuasive:

> The Court also finds that the Trustee's position, that the Debtor had a contingent interest in these accounts on the date of filing that would bring them into the bankruptcy estate, would bring the need for the provisions of § 541(a)(5) into question. The Court can think of no factual or legal basis why the "contingent interest" as a beneficiary of a POD account should be included as property of the estate under § 541(a)(1), while a "contingent interest" as beneficiary of a will would be excluded.
>
> In both cases, the debtor has absolutely no right or access to the property until the death of the owner, the name of the beneficiary can be changed at any time without recourse, and the owner of the property can spend the money in any manner he or she chooses, leaving nothing for the beneficiary at death. If such "contingent interests" are to be included

in § 541(a)(1), there is no need to include property obtained by will in § 541(a)(5). In fact, including such an interest in § 541(a)(1) would expand on what is authorized under § 541(a)(5), because if the interest is property of the estate under § 541(a)(1), there is no limit on when the debtor's interest must vest. The 180 day period that applies to property under § 541(a)(5) is not applicable to property that is brought into the estate under § 541(a)(1) meaning a trustee could claim the interest of any debtor who, at the date of filing their petition, was a potential beneficiary under a POD account or a will, even if the debtor's rights to the property did not vest (if ever) until years later.[69]

Accordingly, we hold the Bankruptcy Court correctly concluded § 541(a)(1) does not bring the Assets into the bankruptcy estate.

## V. CONCLUSION

Based upon its review of the record and the analysis of applicable law above, the Court AFFIRMS the Bankruptcy Court's rulings on the homestead issue and on the issue of L. Hall's post-petition acquisition of property through a pay on death designation.

**68.** *In re Hall,* 394 B.R. 582, 595–96 (Bankr. D.Kan.2008) (emphasis added) (footnotes omitted) (quoting *Snodgrass v. Lyndon State Bank,* 15 Kan.App.2d 546, 811 P.2d 58, 63 (1991)). *See also Nicholas v. Nicholas,* 277 Kan. 171, 83 P.3d 214, 223 (2004) ("[O]wner of a POD bank account retains the right 'to change the designation of beneficiary' and also specifies that the 'interest of the benefi-

ciary shall be considered not to vest until the death of the owner.' A TOD or POD designation on a security 'has no effect on ownership until the owner's death' and a registration of a security in beneficiary form may be canceled or changed at any time without the beneficiary's consent.'").

**69.** *In re Hall,* 394 B.R. at 596.